15613

STATE v. LOGUE

(28 S. E. (2d), 788)

172

July, 1943.

*Messrs. Blackwell, Sullivan & Wilson,* of Laurens, S. C., and *Mr. B. E. Nicholson,* of Edgefield, S. C., Counsel for Appellant,

*Mr. Jeff D. Griffith,* Solicitor of Eleventh Judicial Circuit, of Saluda, S. C., and *Mr. Samuel R. Watt,* Solicitor of the Seventh Judicial Circuit, of Spartanburg, as Counsel for the State, Respondent,

January 19, 1944.

Circuit Judge Wm. H. Grimball, Acting Associate Justice, delivered the unanimous Opinion of the Court:

Appellant was· tried before his honor, Judge ·Bellinger, and a jury at the July, 1943, term of the Court of General Sessions for Edgefield County, on an indictment charging him with the felonious homicide of one Davis W. Timmerman. The jury found him guilty of murder, and the presiding judge sentenced him to death. From this sentence he now appeals to this Court.

An account of the killing of Timmerman appears in the opinion of this Court in the case of *State v. Bagwell et al.*, 201 S. C., 387, 23 S. E. (2d), 244. It need not be here repeated.

· From appellant's brief in the present case we take the following statement:

"Davis W. Timmerman was shot to death by an unknown party in his store in the Meeting Street Section of Edgefield County on the afternoon of September 17, 1941. Thereafter Clarence Bagwell of Spartanburg, S. C., was arrested for the murder of Davis W. Timmerman, and shortly after his arrest made a confession of his participation therein. In his confession Clarence Bagwell implicated· Joe Frank Logue, the appellant, and on November 9, 1941, Joe Frank Logue was arrested.

"After his arrest appellant Joe Frank Logue was carried to the Newberry Jail and was there questioned by E. Gary Davis, B. B. Brockman and Sam M. Henry as to his alleged participation in the murder of Davis W. Timmerman. Subsequently on November 15, 1941, Joe Frank Logue, the appellant, while in the South Carolina penitentiary, made a written detailed confession in which he admitted his participation in the murder of Davis W. Timmerman.

"Clarence Bagwell, George Logue and Sue Logue subsequently were placed on trial in the Court of General Sessions for Lexington County and all three were found guilty by the jury and were subsequently executed for the murder

of Davis W. Timmerman. Joe Frank Logue was produced and used as a witness for the State in the Court of General Sessions for Lexington County in the trial of Clarence Bagwell, George Logue and Sue Logue.

"At a term of the Court of General Sessions in and for Edgefield County, holden at Edgefield, on the first Monday in March, 1943, an indictment was returned by the Grand Jury against the appellant Joe Frank Logue charging that the said Joe Frank Logue did murder and kill the said Davis W. Timmerman on September 17th, 1941. On July 12th, 1943, the appellant Joe Frank Logue was placed on his trial at the Court of General Sessions for Edgefield County upon said indictment before Honorable G. Duncan Bellinger, presiding Judge, and a jury.

"The presiding Judge did not require the jurors empanelled to serve at that time of Court to produce their registration certificates, nor was any inquiry made of them by the Court as to their eligibility, nor did counsel representing the defendant request that it be ascertained of the jurors whether or not they held registration certificates. The jurors were put on their *voir dire* and at the conclusion of the examination of each juror by the Court, the Court asked of counsel, both for the State and for the defense, whether or not the said counsel desired to examine the juror further. In the examination of the respective jurors by counsel, both for the State and the defense, there was no question asked them concerning whether or not they were registered electors and held certificates to that effect. In the examination of each juror on his *voir dire,* as had been requested by the counsel for the defendant, each was examined as to his relationship to W. D. Allen, the former sheriff of Edgefield County, Deputy Sheriff W. L. Clark, Fred Dorn, George R. Logue and Sue Logue. The reason for this examination of the juror as to his relationship being that Sheriff W. D. Allen and his deputy, W. L. Clark, were killed at the home of George R. Logue and Sue Logue while attempting to arrest them on a

warrant charging them with accessory before the fact to murder Davis W. Timmerman. Fred Dorn, a share-cropper of George R. Logue, was also killed at that time in a gun battle growing out of the attempt of the sheriff and his deputy to arrest Sue Logue and George R. Logue.

"Counsel for Joe Frank Logue did not seek a verdict of not guilty but sought a verdict of guilty with recommendation to mercy and this fact was stated frankly to the Court and to the jury during the course of the trial and in arguments. Joe Frank Logue maintained throughout the trial that he participated in the crime solely because of fear for the safety of his wife and mother.

"The jury found the appellant, Joe Frank Logue, guilty of murder and the appellant was sentenced by the presiding Judge to suffer death by electrocution on the 25th day of August, 1943.

"Immediately thereafter and before the adjournment of the Court *sine die,* the defendant-appellant, Joe Frank Logue, moved for a new trial, which was refused by the presiding Judge in an order made and filed on July 23, 1943."

Appellant now charges error in a number of particulars, and we shall consider these one at a time.

It is first charged that there was error in that the presiding judge failed to comply with Section 608 of the Code in that he did not ascertain the qualifications of the jurors by having them present to the Clerk of Court their registration certificates or other satisfactory evidence that they were qualified electors.

There are two reasons for which this exception must be dismissed.

There is no showing made in the record that appellant was in any manner prejudiced by the fact that the jurors were not required to present to the Clerk of Court their registration certificates or other satisfactory evidence that they were qualified electors. It may be presumed from the failure to make any such showing that those

called to serve as jurors at this term of Court were qualified electors;—and that the twelve men who sat upon the jury which convicted appellant were qualified electors.

Nor does the record show that any timely suggestion was made to the presiding Judge that he should have those upon the venire present to the Clerk of Court their registration certificates or other satisfactory evidence that they were qualified electors. Had such a request been made, Judge Bellinger, able and experienced trial judge that he is, would undoubtedly have required this to have been done.

"All objections to jurors called to try prosecutions, or actions or issues, or questions arising out of actions or special proceedings in the various courts of this State, if not made before the juror is empaneled for or charged with the trial of such prosecution or action, or issue, or question arising out of actions or special proceedings, shall be deemed waived; and if made thereafter shall be of none effect." Code, Section 639; *State v. Gregory*, 171 S. C., 535, 172 S. E., 692.

In the selection of the jury the appellant used all of his ten peremptory challenges. One of these he used to excuse one J. B. Berry. He did not challenge juror A. B. Lott, and the latter was a member of the trial jury. Appellant now insists that the trial judge should have excused both of these men on the ground of relationship.

It appeared that upon *voir dire* questioning Lott testified that Timmerman's sister had married Lott's first cousin, and that sheriff W. D. Allen's sister had married Lott's uncle. And it also appeared that Berry's father's brother married the sister of deputy sheriff W. L. Clark.

Judge Bellinger held that neither of these two jurors was disqualified on the grounds of relationship.

It seems that sheriff Allen and his deputy, Clark, were both killed at the home of George R. Logue and Sue Logue while attempting to arrest them on a warrant charging them with being accessory before the fact to the murder of Tim-

merman. And appellant insists that no juror who was related to any of these parties who lost their lives growing out of the murder of Timmerman should sit on the trial jury.

■ It does not however appear that either of these two jurors were related within the sixth degree, either by blood or by marriage, to any of these parties. They may be said to be family connections, but they are not of the family relationship which would place them within the prohibition of the rule.

Section 637 of the Code is as follows: "The Court shall, on motion of either party in the suit, examine, on oath, any person who is called as a juror therein, to know whether he is related to either party, or has any interest in the cause, or has expressed or formed any opinion, or is sensible of any bias or prejudice therein, and the party objecting to the juror may introduce any other competent evidence in support of the objection. If it appears to the Court that the juror is not indifferent in the cause, he shall be placed aside as to the trial of that cause, and another shall be called."

The record shows that these two jurors by their answers to the questions asked them on *voir dire* were indifferent in the cause.

In the case of *State v. Howell,* 167 S. C., 380, 166 S. E., 409, it appeared that the first cousin of the wife of a juror had married the defendant. The presiding judge held that the juror was not related by blood or marriage to the defendant. On appeal this Court held that there was no error in this holding.

In the case of *Gantt v. Belk-Simpson Co.,* 172 S. C., 353, 174 S. E., 1, it appeared that the plaintiff was the sister of the wife of the brother of the challenged juror. The presiding judge held that the juror was not related, either by blood or marriage, to the plaintiff. On appeal this holding was affirmed.

The next exception concerns the admission of certain testimony over the objection of appellant. State's witness Ernest Gary Davis, Sheriff of Saluda County, testified that on the 9th of September, 1941, he was at the Newberry jail; that there were present at the time sheriff Henry of Spartanburg, deputy sheriff Brockman of Spartanburg, Clarence Bagwell, Joe Frank Logue, the appellant, and some others. Over objection he was allowed to testify that at that time and place Bagwell made a statement admitting his own part in the killing of Timmerman; that Logue was asked what he had to say to that statement; and that Logue replied that he knew nothing about it and had no statement to make.

We are able to find no rule of law to the effect that this testimony was not admissible. We have in this jurisdiction a number of cases involving the introduction of testimony going to establish the fact of the silence of the accused when he was directly charged with the crime in his presence. But here Logue was not silent. When asked about Bagwell's statement he denied any knowledge about it. This was not the situation in the cases of *State v. Hester*, 137 S. C., 145, 134 S. E., 885; *State v. Goodwin*, 127 S. C., 107, 120 S. E., 496; *State v. Sudduth*, 74 S. C., 498, 54 S. E., 1013; and others in which the accused was silent when charged with the crime.

It must also be noted that in the present case the State, without objection, introduced in evidence a complete and detailed confession of the appellant as to his part in the death of Timmerman; and that the appellant later from the witness stand corroborated his confession and repeated in detail his part in the crime. It cannot be said that he was prejudiced by the testimony of sheriff Davis.

The next exception charges error in not allowing appellant to testify that before making his confession he had been assured by sheriff Allen that his wife and mother would be protected from harm. The record shows

that when appellant first undertook to testify to this assurance on the part of the sheriff objection was made by the State, and the objection was sustained. However the record shows that appellant was later asked the same question; no objection was made; and he testified that he had made his statement when he had the assurance of the protection of his wife and mother. Under our decisions this cured any error that there may have been in first excluding the testimony.

Appellant offered eight witnesses to testify to the effect that his reputation for peace and good order was good. One of these was V. R. Fleming, Clerk of Court for Laurens County. Among other questions he was asked whether he had ever heard anything against Joe Frank Logue's reputation. Objection to this question was sustained by Judge Bellinger, and to this ruling error is now charged.

This Court has consistently adhered to the rule that the inquiry as to a defendant's reputation is to be limited to two questions; first whether the witness knows that reputation; secondly, whether that reputation be good or bad. This rule, of course, applies to defendant's witnesses on direct examination. In the light of this rule Judge Bellinger was correct in his holding.

Error is charged in that the presiding judge did not instruct the jury that they could recommend mercy until and after defense counsel had so requested. Judge Bellinger's charge was very clear and very able. When he had completed his ·charge on the principles of law involved in the issues in the case he asked counsel if they wished anything further. He had not yet, at that point in his charge, reached a discussion of the various possible forms of the verdict. There can be no doubt whatever that he would have charged the jury on this point without any request from counsel. We can see no merit in this exception.

Error is charged in that the presiding judge did not instruct the jury that each juror had a right to his individual opinion and that before there could be a verdict all twelve must agree. Appellant cites no authorities from this or any other jurisdiction to the effect that this instruction must be given. The authorities from other jurisdictions appear to be contrary to this contention.

The fact that verdicts of juries must be the unanimous opinion of the twelve men composing the jury is of such common knowledge that all men may be presumed to know it without having to be so informed. Mistrials in our courts are matters of common conversation —together with the almost invariably accompanying question: "Did you hear how the jury stood?"

The jury in this case, when the verdict was published, was asked by the clerk whether it was the verdict of them all. And had there been any doubt as to whether or not the verdict was unanimous appellant could have requested the polling of the jury.

All exceptions must be overruled.

Affirmed.

MESSRS. ASSOCIATE JUSTICES BAKER, FISHBURNE and STUKES, and CIRCUIT JUDGE PHILIP H. STOLL, ACTING ASSOCIATE JUSTICE, concur.