15753

STATE v. AMBURGEY

(34 S. E. (2d), 779)

Messrs. *Price & Poag* and *J. Frank Eppes,* all of Greenville, S. C., Counsel for Appellant,

*Solicitor W. A. Bull* of Greenville, S. C., Counsel for the Respondent,

July 18, 1945.

MR. ASSOCIATE JUSTICE FISHBURNE delivered the majority Opinion of the Court.

On January 29, 1944, the defendant, J. N. Amburgey, shot and killed Robert Brown. The homicide was committed in a combination eating place and dance hall operated by the defendant on the Buncombe Road, about eighteen miles above the city of Greenville. Upon his trial for murder—the killing being undisputed—the issues were whether the defendant was guilty of murder or of manslaughter, or whether he killed in self defense. From conviction and sentence for manslaughter the defendant appeals, alleging error in the admission and exclusion of evidence, in the charge to the jury, and in the denial of his motion for a new trial.

For the purpose of showing that the deceased was of a violent and turbulent disposition, the defense offered the witness O. C. Cothran, who, when asked upon direct examination if he knew the general reputation of the deceased with respect to violence and turbulence, replied that he did know it, and that it was bad. On cross examination by the solicitor, it developed that the witness knew the deceased as a bootlegger. Upon re-direct examination by counsel for the defense, the witness was asked if he had ever heard that Robert Brown, the deceased, had cut a man by the name of Clarence Burnett. Objection was promptly made by the solicitor to this evidence, upon the ground that it was improper to go into other specific instances of violence on the part of the deceased; and the Court sustained the objection.

Appellant contends that the solicitor in his examination opened the door to testimony with reference to specific incidents, and that the Court erred in excluding the question asked by defense counsel.

The rule has long been established in this State that evidence of other specific instances of violence on the part of the deceased are not admissible unless they were directed against the defendant, or, if directed against others, were so closely connected in point of time or occasion with the homicide as reasonably to indicate the state of mind of the deceased at the time of the homicide, or to produce reasonable apprehension of great bodily harm. *State v. Hill*, 129 S. C., 166, 123 S. E., 817, and cases cited therein.

The appellant, however, is in no position to complain. As soon as the witness Cothran was excused, the defendant obtained the very evidence he desired, from his witness Clarence Burnett. He stated upon direct examination that he knew nothing about the reputation of the deceased for turbulence and violence. Then, when asked if the deceased had ever cut him, he replied in the affirmative. Objection was made to this evidence on the ground that

the defense had no right to go beyond proof of general reputation. The objection was sustained, but the jury heard the evidence, and the Court did not order it stricken out.

The second exception relates to a matter already referred to. When the solicitor brought out on cross examination that the defense witness, O. C. Cothran, who was a deputy sheriff, had known the deceased as a bootlegger, he immediately requested the trial Judge to instruct the jury that the reputation of the deceased as to handling liquor had nothing to do with his reputation for turbulence and violence. The trial Judge ruled:

"I will leave it to the jury to say what the witness's testimony is; it is a matter for them to say what the witness says; but I will say to the jury that the point we are concerned with, the trait of character of the deceased, is peace and good order or turbulence and violence; and the handling or sale of liquor would not necessarily relate to that."

It is argued that the trial Judge should have left this testimony to the jury as to whether or not it affected the reputation of the deceased. There is obviously no merit in this contention. Under the ruling of the Court, the question was, to all intents and purposes, left to the jury as to whether or not it affected the reputation of the deceased. But we think under the facts as shown by the record, the trial Judge would have committed no error if he had held as a matter of law, that the evidence bearing upon the fact that the deceased had been a bootlegger, was irrelevant as to his reputation for turbulence and violence. 40 C. J. S., Homicide, § 222 (2), page 1141.

The next exceptions to be considered deal with alleged errors in the charge given to the jury.

After a most comprehensive general charge, soundly covering every element connected with the issues, the Court was requested by counsel for the defense and by the solicitor to give certain additional instructions to the

jury. At the request of the solicitor, he gave the following charge:

"A homicide is not justifiable or excusable on the ground of self-defense by reason of a danger or apprehension of danger, of slight bodily injury, or of a mere indignity, or of a slight or moderate injury, such as that to be apprehended *from a simple or ordinary assault or battery with the hand or fist without a weapon,* unless the assault is accompanied by acts indicating imminent danger of serious bodily harm or felony and produces in the mind of accused a reasonable belief of such danger." (Emphasis added.)

It is said that the portion of the instruction which is italicized constituted a charge upon the facts, and thereby invaded the province of the jury. Immediately following the above-quoted charge, the trial Judge in his own language stated to the jury:

"In connection with that the jury should also, of course, consider the question of reasonably apparent danger; and you also consider my general charge as to the requirement that the defendant believed he was in imminent danger of losing his life or of suffering serious bodily harm, that is, the circumstances were such that the ordinary man of ordinary prudence and courage would have entertained that belief."

There is evidently no foundation to this exception. The evidence shows without dispute that the appellant was armed with a pistol, and that the deceased had no weapon at all. According to the version of this affair given by the defendant, he was attacked by the deceased solely with his hands and fists.

Appellant contends that certain requests to charge submitted by the solicitor, and given by the trial Judge, were inconsistent with reference to the general charge given by the Court. A few illustrations with reference to this alleged confusion will show that there is no merit in the exceptions raising these questions.

The Court charged the State's fourth request, as follows:

"In order to justify or excuse a homicide in self-defense, the danger, whether real or apparent, must be impending and imminent; the danger must be actual, present and urgent, or such as the defendant believes on reasonable grounds to be so urgent and impending that it is necessary for him to kill in order to save himself from immediate death or serious bodily harm."

The foregoing request was immediately followed by this further explanation:

"There is also to be taken into consideration the belief of the defendant and the belief justified under the circumstances in the mind of a man of ordinary prudence and courage. Also the law as to appearances."

The Court charged the fifth request of the solicitor:

"The reasonableness of the defendant's apprehension is for the jury, and not the party charged, to be ascertained from the evidence and proper instructions of the court."

The trial Judge immediately followed with this exposition of the law:

"In my general charge I stated to the jury that the defendant himself must believe he is in imminent danger; and I charge you also that not only the defendant but a person of ordinary prudence and courage must be justified in having such a belief as to the loss of life or sustaining serious bodily harm; and the law which I have given to you as to acting upon appearances."

It is inconceivable that the jury could have been in any way misled or confused as to the principles of law they should be guided by. The trial Judge again and again fully charged every element relating to the plea of self-defense. In charging the numerous requests submitted by counsel for the defense, these elements were again gone over, restated, and by their repetition re-emphasized.

■ The last issue presented by the appeal is whether the Court erred in refusing to grant a new trial based upon the ground that one of the jurors, W. B. Perry, who convicted the appellant, was not a qualified (registered) elector. In overruling the motion for a new trial, the trial Judge relied upon the decisions of this Court in the cases of *State v. Gregory*, 171 S. C., 535, 172 S. E., 692; and *State v. Logue*, 204 S. C., 171, 28 S. E. (2d), 788.

It is conceded that the juror, W. B. Perry, was not a registered elector. It appears that two men bearing this name and with these initials resided in Greenville County. One was a qualified elector, but the one actually summoned for jury service had never been registered. His lack of qualification in this respect did not become known until a jury was being selected during the same week of Court to try another defendant. The motion for a new trial was made after this incident, and after sentence had been pronounced upon the defendant.

In *State v. Gregory*, 171 S. C., 535, 172 S. E., 692, 695, this Court held:

"We are compelled, nevertheless, to hold that there was manifest error, so much as to amount to an error of law, and the wrongful exercise of the discretion committed to him under the law, in the holding of the circuit judge that due diligence was exercised on the part of the respondents in their efforts to ascertain before the jurors were sworn their disqualification to sit in the case. Clearly, under numerous decisions of this court, so very many that it is useless to cite them (see annotation under section 639 of the Code), a party, in his trial, who fails to exercise due diligence in discovering the disqualification of a juror, before the empaneling of the jury, cannot, after the rendition of a verdict adverse to him, rightly ask the court to disturb that verdict. This court, time after time, has disapproved the quiet sitting of a party, with information already obtained, or which could easily be obtained, as to the disqualification of a juror,

taking his chances, ready to acquiesce in a favorable verdict, and more ready to move the setting aside of an unfavorable one. The provisions of section 639 of the Code say that objections to jurors, not taken before the jury is empaneled, 'shall be deemed waived; and if made thereafter shall be of none effect.' The court has construed the language of the section to mean such objections of which the party had knowledge, or which by the exercise of due diligence he could have known."

But our attention is directed by appellant to Section 608 of the Code, which provides for the preparation of the jury list—and especially to the amendment of 1939 thereto, which reads as follows:

"Provided, futher, that the presiding judge shall at each term of court, ascertain the qualifications of jurors by having them present to the clerk of court their registration certificates or other satisfactory evidence that they are qualified electors * * *."

Counsel for appellant earnestly contend that the effect of the amendment is to completely overturn and nullify the holding of the Court in *State v. Gregory, supra*, and similar cases, and the sound rationale upon which those cases are based. It is said that the 1939 amendment, being mandatory, wholly relieves a defendant and his counsel from exercising any diligence in discovering before the empaneling of a jury, whether a juror is a qualified elector; and that this duty and responsibility now rest exclusively upon the trial Judge.

We should say in passing that it is admitted that one of the attorneys for the defense was in the Court Room upon the opening of the Court, and present when the clerk of court publicly called the names of the petit jurors on the jury list in order to check the names of those who were present and those who were absent.

It is conceded that no effort was made by counsel for the defense to ascertain whether any of the petit jurors were qualified electors. When the trial of the defendant was en-

tered upon and the individual jurors were being called and presented, no inquiry was made of the trial Judge—the highest authority—as to whether or not the jurors present had been required to present to the clerk of court their registration certificates. Nor was any inquiry made of the clerk of court. The jurors were presented separately and examined upon their *voir dire*. Counsel for the defense exercised the privilege extended by the Court of asking any additional questions of the jurors as to their qualifications, but no question was asked with reference to whether any juror was a qualified elector.

The decision in *State v. Gregory, supra,* was handed down in 1934, and hence was prior to the amendment of 1939. The decision in *State v. Logue, supra,* was subsequent thereto. In the *Logue case* the point was made that the trial Judge had inadvertently failed to ascertain the qualifications of jurors, as required by the 1939 amendment, now incorporated in Section 608 of the 1942 Code.

While it is true that in the *Logue case* no showing was actually made that any of the jurors were in fact disqualified, I do not think that this fact in any way qualified or limited the holding of the Court.

The second ground upon which the decision in the *Logue case* was based, holds (204 S. C., 171, 28 S. E. (2d), 790) :

"Nor does the record show that any timely suggestion was made to the presiding judge that he should have those upon the venire present to the Clerk of Court their registration certificates or other satisfactory evidence that they were qualified electors. Had such a request been made, Judge Bellinger, able and experienced trial judge that he is, would undoubtedly have required this to have been done.

" 'All objections to jurors called to try prosecutions, or actions or issues, or questions arising out of actions or special proceedings in the various courts of this State, if not made before the juror is empaneled for or charged with the trial of such prosecution or action, or issue, or question arising

out of actions or special proceedings, shall be deemed waived; and if made thereafter shall be of none effect.' Code, Section 639; *State v. Gregory,* 171 S. C., 535, 172 S. E., 692."

And it will be noted that in the foregoing quotation there is cited *State v. Gregory,* 171 S. C., 535, 172 S. E., 692, as supporting and upholding the ruling of the Court.

In the recent case of *State v. Hann,* 196 S. C., 211, 12 S. E. (2d), 720, the Court deals extensively with the qualification of grand jurors, and generally discusses the necessity that objection that members of a grand jury which find an indictment are not qualified electors, should be made by demurrer or motion to quash the indictment before pleading to it. Many of the earlier cases are cited, holding that timely objection must be made before pleading to the indictment, or else any objection to the jurors will be waived.

In *State v. Hann, supra,* the Court quoted the following from *State v. Rector,* 158 S. C., 212, 155 S. E., 385, 391 :
"While the disqualification of a grand juror may be waived by the defendant if he does not make the objection in time (*State v. Motley,* 7 Rich., 327, and *State v. Boyd,* 56 S. C., 382, 34 S. E., 661), yet when a defendant does insist at the time when he may do so, he is entitled, as a matter of constitutional right, to have the grand jury, which indicts him, composed only of such persons as the Constitution of the state has plainly declared may act thereon." (196 S. C., 211, 12 S. E. (2d), 727.)

The trial Judge in the case at bar overruled the motion for a new trial upon the ground that the defendant, having failed to make any timely suggestion to the presiding Judge that he should have the jurors present to the clerk of court their registration certificates, or other satisfactory evidence that they were qualified electors, waived such requirement. And we think his ruling is correct and falls specifically within the holding in the *Logue case.*

The 1939 amendment merely provided an additional legal safeguard with reference to the qualifications of jurors; but as we see it, in no sense does it relieve a defendant from exercising due diligence in ascertaining the statutory and constitutional qualifications of jurors.

Section 639, 1942 Code, has been referred to in all of the prior cases passing upon this issue as controlling, and that is, that objections to jurors, if not made before the juror is empaneled or charged with the trial of a case, "* * * shall be deemed waived; and if made thereafter shall be of none effect."

In our opinion, the amendment of 1939 did not in any respect modify or repeal the overall effect of this statute. It seems to us that to hold otherwise would be to inject into the trial of a case the elements of a game of chance, based solely upon the inadvertance of a trial Judge to require jurors to present evidence that they are qualified electors.

The judgment below is affirmed.

MESSRS. ASSOCIATE JUSTICES STUKES and OXNER concur.

MR. CHIEF JUSTICE BAKER and MR. ASSOCIATE JUSTICE TAYLOR dissent.

MR. CHIEF JUSTICE BAKER (dissenting):

The appellant, a man sixty-three years of age, was tried and convicted at the September, 1944, term of Court of Greenville County. While the indictment charged murder, the jury found him guilty of manslaughter and he was sentenced to serve nine years.

Before the adjournment of the Court, but after sentence (the respondent raises no issue as to the sentence having been pronounced), the appellant made a motion for a new trial upon the ground that he had been tried by an illegal jury, in that it had developed that W. B. Perry, one of the jurors who tried and convicted the appellant, was not a qualified elector. There was a W. B. Perry residing in Green-

ville County who was a qualified elector, but not the one who sat as a juror on appellant's case.

It is conceded that the presiding Judge did not "ascertain the qualification of jurors by having them present to the Clerk of Court their registration certificates or other satisfactory evidence" that they were qualified electors.

While the jurors in this case were examined on their *voir dire*, and counsel were permitted by the Court to ask additional questions as to their qualifications, there was no inquiry as to whether the jurors were qualified electors.

The trial of appellant was begun on September 4, 1944. On September 9, 1944, the same week of Court, when a jury was being selected to try another defendant, it came to light that juror W. B. Perry was not a qualified elector, and he was excused from further jury duty. Upon this information coming to the attention of appellant, he made a motion for a new trial as aforestated.

Article 5, Section 22, of the Constitution of 1895 is in part as follows:

"All persons charged with an offense shall have the right to demand and obtain a trial by jury. * * * The grand jury of each County shall consist of eighteen members, twelve of whom must agree in a matter before it can be submitted to the Court. The petit jury of the Circuit Courts shall consist of twelve men, all of whom must agree to a verdict in order to render the same. Each juror must be a qualified elector under the provision of this Constitution, between the ages of twenty-one and sixty-five years, and of good moral character."

Section 608 of the Code of 1932, as amended by Act of the 10th of May, 1933, 38 St. at Large, p. 446, No. 321, is in part as follows:

"The said county auditor, county treasurer, and the clerk of Court of Common Pleas of each county shall in the month of December of each year, prepare a list of such qualified male electors, under the provisions of the Constitution, be-

tween the ages of twenty-one and sixty-five years, of good moral character, of their respective counties, as they may deem otherwise well qualified to serve as jurors, being persons of sound judgment and free from all legal exceptions, which list shall include not less than one from every three of such qualified male electors under the provisions of the Constitution, between the ages of twenty-one and sixty-five years and of good moral character, to be selected without regard to whether such persons live within five miles or more than five miles from the court house * * *."

In 1939 by Act No. 219, 41 St. at Large, p. 332, Section 608 of the Code of 1932, as amended in 1933, was further amended so as to provide in part that the list of qualified male electors shall be prepared from the official enrollment books of qualified electors, and provided further "that the presiding judge shall at each term of court, ascertain the qualifications of jurors by having them present to the clerk of court their registration certificates or other satisfactory evidence that they are qualified electors," and said section as amended by the Act of 1939 appears as section 608 (the same section number) of the Code of 1942.

In the case of *State v. Gregory et al.,* 171 S. C., 535, 172 S. E., 692, 695, tried at Chesterfield in September, 1932 (prior to the amendment of 1939), Gregory and another were convicted of manslaughter, and a motion for a new trial was made and granted on the ground that several of the jurors were not registered electors. In that case no issue was raised about the jurors until after an adverse judgment, although the jurors were sworn on their *voir dire* and were not questioned as to whether they were qualified electors. In reversing the trial Judge for granting a new trial to the convicted defendants, this Court stated:

"Clearly, under numerous decisions of this court, so very many that it is useless to cite them (see annotation under section 639 of the Code), a party, in his trial, who fails to exercise due diligence in discovering the disqualification of a

juror, before the empaneling of the jury, cannot, after the rendition of a verdict adverse to him, rightly ask the court to disturb that verdict. This court time after time, has disapproved the quiet sitting of a party, with information already obtained, or which could be easily obtained, as to the disqualification of a juror, taking his chances, ready to acquiesce in a favorable verdict, and more ready to move the setting aside of an unfavorable one. The provisions of section 639 of the Code say that objections to jurors, not taken before the jury is empaneled, 'shall be deemed waived; and if made thereafter shall be of none effect.' The court has construed the language of the section to mean such objections of which the party had knowledge, or which by the exercise of due diligence he could have known."

However, prior to the statement just above quoted, the Court stated:

"We are in thorough accord with the position of the respondents, which was upheld by Judge Stoll, that the respondents in their trial, in the court of general sessions, were entitled, as a matter of right and law, to be tried by twelve jurors, qualified under the law to act as jurors in their case, and that one of the necessary qualifications was the registration of each and every juror as a qualified elector of the county of Chesterfield. See *State v. Rector,* 158 S. C., 212, 155 S. E., 385, and the several cases therein reviewed."

In *State v. Bibbs,* 192 S. C., 231, 6 S. E. (2d), 276, tried in February, 1939 (prior to the amendment of Section 608 of the Code of 1932 as amended in 1939, and where timely objection was made), the defendant was convicted on an indictment charging murder, which indictment was found by a grand jury six of whom did not possess the legal qualifications of grand jurors in that they were not legally qualified electors, and on appeal this Court set aside the conviction. In the *Bibbs case* there is quoted with approval from the case of *State v. Rector,* 158 S. C., 212, 155 S. E., 385,

a portion of the concurring opinion of Mr. Justice Cothran, in which he stated:

"* * * that one who may be drawn, sworn in, and acts as a grand juror in passing upon an indictment, when he is not legally qualified to do so, is a stranger to the proceedings, as much as if he had never been drawn; his participation would therefore be illegal; it would be impossible to gauge the extent of his influence upon the qualified members of the jury." (192 S. C., 231, 6 S. E. (2d), 281.)

The only case of which we may have any knowledge coming to this Court, and involving the question now before the Court and tried and decided since the amendment of 1939 making it the duty of the trial Judge to ascertain the qualifications of prospective jurors, is *State v. Logue,* 204 S. C., 171, 28 S. E. (2d), 788, 790. The defendant-appellant, Logue, was convicted of murder, and moved for a new trial on the ground that the trial Judge failed to comply with Section 608 of the Code (1942), in that he did not ascertain the qualifications of the jurors by having them present to the Clerk of Court their registration certificates or other satisfactory evidence that they were qualified electors, which motion was refused.

In passing upon the exception thereto, the Honorable Wm. H. Grimball, Circuit Judge, Acting Associate Justice, writing the opinion of the Court, had this to say:

"There are two reasons for which this exception must be dismissed.

"There is no showing made in the record that appellant was in any manner prejudiced by the fact that the jurors were not required to present to the Clerk of Court their registration certificates or other satisfactory evidence that they were qualified electors. *It may be presumed from the failure to make any such showing that those called to serve as jurors at this term of court were qualified electors—and that the twelve men who sat upon the jury which convicted appellant were qualified electors.* (Emphasis added.)

"Nor does the record show that any timely suggestion was made to the presiding judge that he should have those upon the venire present to the Clerk of Court their registration certificates or other satisfactory evidence that they were qualified electors. Had such a request been made, Judge Bellinger, able and experienced trial judge that he is, would undoubtedly have required this to have been done.

" 'All objections to jurors called to try prosecutions, or actions or issues, or questions arising out of actions or special proceedings in the various courts of this State if not made before the juror is empaneled for or charged with the trial of such prosecution or action, or issue, or question arising out of actions or special proceedings, shall be deemed waived; and if made thereafter shall be of none effect.' Code, Section 639; *State v. Gregory,* 171 S. C., 535, 172 S. E., 692."

That case is distinguishable from the present case in the important particular that it discloses that no showing was made that any of the jurors were in fact disqualified. The second reason given by Mr. Justice Grimball must be read in the light of Section 639 of the Code, and as being applicable only because of the dual fact that the trial Judge failed to inquire as to the qualifications of the jurors and that none of such jurors were in fact disqualified. Were the request made and refused, it might be that the refusal of the trial Judge to comply with it would be reversible error without inquiring into the question whether any of the jurors were in fact disqualified. But that is a matter not involved in the present case, and we express no opinion thereabout.

The correct interpretation of the *Logue case* is that "it may be presumed from the failure to make any such showing that those called to serve as jurors * * * were qualified electors—and that the twelve men who sat upon the jury which convicted the appellant were qualified electors," and that in consequence of this presumption, necessitated by the record, the defendant could not be thought to have been pre-

judiced by the omission of the trial Judge to comply with the statutory direction.

In the face of such presumption, it would have been hyper-technical on the part of this Court to recognize the asserted omission on the part of the Circuit Judge as having any possible bearing on the merits of the case. And this would be true whether we regard the matter from the standpoint of the bare failure of the trial Judge to comply with the statutory direction, or from the standpoint of the failure of counsel to call attention to the matter before judgment.

In the present case, on the other hand, it is a record fact that one of the jurors was disqualified under both the Constitution and the statute law of the State. The defendant, especially in a case involving a capital crime, is entitled to full compliance with the constitutional and statutory man-dates respecting the qualifications of the jurors who are to decide his fate, provided that non-compliance therewith in-volves no affirmative acts on the part of the defendant or his counsel creating an estoppel. When there was no stat-utory direction with respect to the manner of determining the qualification of jurors, it may be reasoned that the re-sponsibility rested as much upon counsel as upon the Court, and that lack of diligence on the part of counsel in ascertain-ing the facts constituted a waiver of the right to raise the objection after judgment. But where the statute specifically places upon the trial Judge the burden of ascertaining the qualifications of jurors, that takes the burden away from counsel for the defendant. It is equivalent to saying to the defendant and his counsel that in respect to other matters of disqualification of jurors, they must continue to be dil-igent without reliance upon the Court to protect their rights, but that in respect to the determination whether each juror is a qualified elector, the duty rests upon the Court.

There is a fundamental distinction between common law grounds of disqualification which have been enacted into statute, such as relationship by blood or marriage, pecuniary

interest, expressed bias, etc., and disqualifications which arise out of the constitutional elements of due process in the trial of persons accused of crime. The latter are mandatory; and when the burden of ascertaining their presence in a pending case is placed upon the Court, that burden cannot be shifted to the defendant.

The case, of course, would be different if it were shown that the defendant had actual knowledge of the disqualification of the juror in question and went to trial without raising the point. Vital juridical considerations would then deter the Court from giving heed to the objection after the imposition of sentence.

The rule above stated involves no departure from established principles. On the contrary, it conforms to them.

In civil and criminal cases alike, this Court had repeatedly held that failure of the Court to charge the principles of law applicable to a pending case is reversible error, even though counsel failed to call the attention of the Court to such omission. See, for example, *State v. Osborne*, 200 S. C., 504, 21 S. E. (2d), 178.

Nor does a waiver arise out of the fact that the trial Judge committed error in stating the applicable law, even though counsel had an opportunity to call the Court's attention to such error and failed so to do. *Citizens Bank v. McDonald et al.*, 202 S. C., 244, 24 S. E. (2d), 369.

How much more vital it is that in a capital case, where the statute expressly imposes on the trial Judge the duty to safeguard the constitutional and statutory rights of the defendant by giving him a jury with the qualifications prescribed by law, the defendant shall not be put on his trial before a jury of whom one or more members had no right to sit in judgment on his life or liberty.

The matter was well expressed by the late Chief Justice McIver in the civil case of *Garrett v. Weinberg*, 54 S. C., 127, 31 S. E., 341, 345, 34 S. E., 70:

"The only remaining inquiry is whether the disqualification of Ardis to serve as a juror entitled the defendants to have their motion for a new trial granted. In view of the express provisions of the constitution above quoted, which are declared mandatory, it is difficult to see how this question can be answered otherwise than in the affirmative. This being a question of title to real estate, it is not necessary to cite authority to show that the parties were entitled to a trial by jury. What that jury should consist of is expressly declared in mandatory terms by the constitution. It must be a body of 12 men, each of whom must be a qualified elector, and 'all of them must agree to a verdict, in order to render the same.' These are the express mandates of the constitution, and must be obeyed. But here we have a body of 12 men, one of whom is not a qualified elector, who has undertaken to render a verdict, which, under the terms of the constitution, they have no power to do; and hence the same should be disregarded, and set aside, and a new trial ordered."

While the holding in that case appears to be limited by the decision in the case of *State v. Robertson,* 54 S. C., 147, 31 S. E., 868, to the extent of imposing the requirement that it appear that the disqualification could not have been discovered with the exercise of reasonable diligence prior to judgment, that case was decided prior to the 1939 amendment which we regard as controlling in the disposition of the question now before us.

As stated by the late Chief Justice Bonham while acting as Associate Justice, in the case of *State v. Elliott,* 169 S. C., 208, 168 S. E., 546, 548:

"The Constitution guarantees to every person a fair and impartial trial by a jury of his peers. It cannot be said that one has had such trial if there has sat on the jury one who is expressly disqualified to sit there; * * *."

In the case last cited the due diligence rule was restated but that case, too, was decided prior to the 1939 amendment.

We attach considerable weight to the fact that the General Assembly, presumptively knowing of the due diligence rule which theretofore had prevailed, concluded that in the matter of the determination of the qualification of jurors, the burden should rest upon the Court and not upon the defendant. There is no other theory upon which the 1939 amendment can be construed or applied. And as so construed or applied it is a definite negation of the previously existing rule as applied to the facts of this case.

The above holding makes it unnecessary that we pass upon the other exception of the appellant.

The judgment of the lower Court should be reversed and the case remanded to that Court for a new trial.

Mr. Associate Justice Taylor concurs.