15901

STATE v. DᴇYOUNG

(41 S. E. (2d) 100)

*Mr. Marvin R. Reese,* of Greer, and *Messrs J. G. Leatherwood* and *W. E. Bowen,* of Greenville, for Appellant,

January 2, 1947.

MR. Associate Justice Stukes delivered the majority opinion of the Court.

The facts relating to this appeal are taken from appellant's brief; the Solicitor and his associate counsel filed none, and likewise made no oral argument.

Appellant was convicted at the May 1946 term of the Court of General Sessions for Greenville County of the crime of assault and battery with intent to kill. Before sentence the court refused motion for a new trial made upon the ground that one of the trial jurors was disqualified because he had previously moved his residence from Greenville to the adjoining county of Spartanburg. At the convening of the court the presiding judge complied with the provision of Sec. 608 of the Code which required that he ascertain that the jurors possessed registration certificates. On the panel was one W. G. Stokes who had registered on October 6, 1944, while a resident of Greenville County but subsequently moved to Spartanburg County where he resided at the time of this jury service.

After completion of the testimony, arguments and charge and when the jury were out, upon their deliberation, an unknown bystander informed appellant's counsel that he thought Stokes lived in Spartanburg County, whereupon counsel passed the rumor to the trial judge who asked the Clerk to check the mileage given by the juror and it was found to correspond with his listed Greenville County address. The result of this cursory investigation convinced counsel that the juror was qualified by residence, and nothing further was done or said about it until after the rendition of verdict when counsel obtained more information (again by chance, when the juror employed him to draw a deed to Spartanburg land) and made the motion for a new trial, from the denial of which this appeal was taken.

The case is controlled by the reasoning and precedent of *State v. Amburgey*, 206 S. C., 426, 34 S. E. (2d), 779, and the authorities there cited. It is provided by the old statute which is now section 639 of the Code of 1942, as follows: "All objections to jurors called

.to try prosecutions, or actions or issues, or questions arising out of actions or special proceedings in the various .courts of this State, if not made before the juror is impaneled for or charged with the trial of such prosecution or action, or issue, or question arising out of actions or special proceedings, shall be deemed waived; and if made thereafter shall be of none effect".

It was early held that the statute applies only to disqualifications of jurors which were known to the complaining party or his counsel before trial or unknown and such ignorance was due to the lack of diligence. Where the disqualification relied upon might have been discovered by the exercise of ordinary diligence, it affords no excuse for failing to make the objection in due season. Otherwise, the party would be permitted to take advantage of his own negligence. *State v. Robertson,* 54 S. C., 147, 31 S. E., 868.

In the case now before us the appellant or his counsel could have quite easily ascertained that the juror, although duly registered in Greenville County, had moved across the line into Spartanburg County before summoned to jury duty. Little effort would have been required; certainly the failure to make effective inquiry was not the exercise of due diligence. Moreover, inquiry was not diligently pursued when counsel first accidentally came upon the information. He was thereupon satisfied by the knowledge that the juror had stated the mileage from his home to the Court House which corresponded with the residence given in his registration certificate. No effort or motion was made to further verify the fact, which could have conveniently been done by the questioning of the juror by the court or counsel. The court could have easily been asked to call him from the jury room for that purpose.

It is contended that it would have been embarrassing and possibly prejudicial for counsel to have asked at that stage for interrogation of the juror. A like argument was made in *State v. Gregory,* 171 S. C., 535,

172 S. E., 692, and upon examination was found to be without merit. There it was contended that to request the court to inquire concerning the registration of the jurors would have incurred the risk of offending them and thereby endangering the cause of the defendants. But it was pointed out by the court that such position was untenable. And we think it equally so here.

Thus appellant and his counsel were wanting in diligence in the first place in their failure to ascertain the disqualifying change of residence of the juror before trial and, in addition, when the information fortuitously came to them during the course of the trial, they did not pursue it. They could not in that manner take their chances upon a favorable verdict and complain after an unfavorable one. The appeal must be dismissed.

Judgment affirmed.

Mr. Associate Justice Fishburne concurs and Mr. Associate Justice Oxner concurs in result.

Mr. Chief Justice Baker and Mr. Associate Justice Taylor dissent.

Mr. Associate Justice Oxner (concurring) :

I am persuaded that the judgment of the lower Court should be affirmed. A brief reference to the facts disclosed in the affidavits presented by appellant on the motion for a new trial may be helpful in determining the question involved on this appeal. No affidavits were offered by the State.

The Greer Mill and the Victor Mill are units of the Victor-Monaghan group of cotton mills. Both plants are located at or near the town of Greer. The entire village of the Greer Mill is located in Greenville County, while that of the Victor Mill is located in Spartanburg County. According to appellant's affidavits, the juror in question, W. G. Stokes, was never employed at the Greer Mill and never resided in the village of this plant, but for a number of years prior to

December, 1945, had been employed by the Victor Mill and lived in that village. One of the employees of the Victor Mill stated in his affidavit that during the fall of 1945, he rented to Stokes a 35-acre farm owned by him near the town of Wellford in Spartanburg County; that thereafter in December, 1945, Stokes moved to this farm, has since resided there, and has recently agreed to purchase same; and that at the time of the trial of this case in May, 1946, Stokes was working at a small cotton mill near Wellford. Mr. Reese, one of appellant's attorneys, stated in his affidavit that Stokes called at his office on the day after appellant was convicted for the purpose of having him prepare a deed to this property.

Although counsel for appellant state in their brief that after registering in Greenville County on October 6, 1944, Stokes moved from Greenville to Spartanburg County, all of appellant's affidavits are to the effect that for a long period of years this juror had resided at Victor Mill in Spartanburg County. Therefore, according to these affidavits, the change of residence was not from Greenville County to Spartanburg County, but was from one point in Spartanburg County to another in the same county. *Mr. Reese, leading counsel for appellant, resides and has his office in the town of Greer near which both the Greer and Victor Mills are located.* It is a common practice after the jury list is published for counsel to inquire as to the occupations of those drawn for jury service and the sections of the county in which they reside. The slightest inquiry by appellant's counsel would have disclosed that this juror was working at the time he was drawn for jury service either at the Victor Mill or at a small mill near Wellford, both of which are located in Spartanburg County. The information thus obtained would naturally lead to the further inquiry as to whether the juror was residing in the county where he was employed.

In *State v. Jones,* 90 S. C., 290, 73 S. E., 177, a new trial was sought upon the ground that one of the jurors at the time of the trial was more than 65 years of age, and, there-

fore, disqualified to serve under the provisions of the Constitution. The Court held that if the juror was over the prescribed age, such fact, although not previously known to the defendant or his counsel, should in the exercise of due diligence have been discovered by counsel before the verdict was rendered.

The fact that the juror registered in Greenville County on October 6, 1944, would indicate that at that time he resided in Greenville County, although the affidavits of appellant are to the effect that he was then a resident of Spartanburg County. It is possible, though not probable, that the juror was confused as to the location of the county line. Mr. Reese states in his affidavit that the juror was requested but refused to make an affidavit to be used on the motion for a new trial. However, no subpoena was issued or other effort made to require him to testify at this hearing. If we assume, contrary to appellant's showing, that this juror resided in Greenville County in October, 1944, it does not necessarily follow that by thereafter moving to Wellford in Spartanburg County he intended to abandon his residence in Greenville County. Section 2279 of the 1942 Code prescribes the method of obtaining a new registration certificate when an elector moves from one county to another. There is no showing that this juror ever made any effort to get a new registration certificate in Spartanburg County as authorized by this Section. The fact that the juror refused to make an affidavit when requested to do so by appellant's counsel rather leads to the impression that he disagreed with appellant's contention as to his residence.

There is not involved in this case the question of a defendant being tried by a jury of which one member was disqualified under the Constitution to perform jury duty. The juror in question possessed all the qualifications required by Article 5, Section 22, of the Constitution. Neither are there involved questions relating to actively disqualifying defects, such as close kinship to one of the parties, bias or prejudice, or the moral incapacity of the juror. The juror's claimed

ineligibility to serve rests on residence which could not affect his ability to fairly and impartially consider and decide the case. His alleged disqualification is statutory. While such a statutory disqualification undoubtedly furnishes a good ground for challenging the juror, it is generally held that where the objection is not timely made, the verdict should not be lightly set aside. There should be a clear showing of due diligence. A distinction is drawn between a disqualification of this kind and one involving bias or partiality. 35 C. J., page 368; *Jordan v. State,* 119 Ga., 443, 46 S. E., 679. In *Kohl v. Lehlback, Sheriff,* 160 U. S., 293, 16 S. Ct. Rep., 304, a defendant was convicted of murder and sentenced to be hanged. In denying the contention that he was denied due process of law and the equal protection of the laws, in that one of the jurors by whom he was tried was an alien, the Court stated: "The defect is not fundamental as affecting the substantial rights of the accused".

For the foregoing reasons, I concur in the conclusion reached by Mr. Justice Stukes.

MR. CHIEF JUSTICE BAKER (dissenting) :

I regret the necessity of writing a dissenting opinion to that of Mr. Justice Stukes.

It is without dispute that the jury which convicted appellant of assault and battery with intent to kill had as a member of its body a juror who was not a resident of Greenville County, but was, and had been for some time, a resident of Spartanburg County. Before the selection of the jury which sat upon this case the Presiding Judge ascertained the qualifications of the jurors and in response to his inquiries did not receive any notice of disqualification pertaining to any juror. The members of the panel either presented their registration certificates, or stated they were in possession of same, and among those certificates presented was one by W. G. Stokes, dated October 6, 1944, showing his residence as No. 4, Hardin Street, Greer Mill, Greenville County, but Mr. Stokes did not disclose to the Court, or

any of the officials of the Court, that he was living in Spartanburg County. .

After the jury had retired to its quarters for deliberation counsel for appellant was informed by a young man that he thought Mr. Stokes was a resident of Spartanburg County. This information was immediately reported to the Presiding Judge who instructed the Clerk to check the mileage of the juror as given by him at the convening of Court with the residence on the certificate. The check or investigation on the mileage basis was satisfactory, and it was then assumed that the juror did reside at No. 4 Hardin Street, Greer Mill, Greenville County, although it later developed, following the verdict of the jury and before the argument on motion for a new trial, that there did not exist any street in Greer Mill having the name of "Hardin".

After the publication of the jury's verdict, and before sentence, counsel for appellant moved for a new trial on the ground that W. G. Stokes was not a resident of Greenville County and therefore not a qualified juror, and presented to the Court affidavits which established the residence of Mr. Stokes in Spartanburg County beyond any doubt. The Presiding Judge overruled the motion, holding that he was bound by the law as stated in *State v. Amburgey*, 206 S. C., 426, 34 S. E. (2d), 779; that appellant waived his rights when, upon receipt of the information, he did not move to have the juror brought from the jury room and examined, and, further, that appellant did not raise the question until after the return of the verdict. The last-mentioned basis for the refusal to grant the new trial may be disposed of at this time for it is patent that the question was raised before the rendition of the verdict and during the deliberation of the jury. The issue then resolves itself into the query, was appellant or his counsel wanting in diligence in not ascertaining, before trial, the qualifying residence of a juror? There is, of course, the second proposition that having received this information during the trial, was there lack of diligence to constitute waiver?

Section 608, Vol. I, Code of Laws, 1942, directs that the jury Commissioner "shall in the month of December of each year, prepare from the official enrollment books of qualified electors, a list of such qualified male electors, under the provisions of the Constitution, between the ages of twenty-one and sixty-five years, of good moral character, *of their respective counties* \* \* \*." (Italics added.) The portion of this Section is quoted in order to bring to the foreground the requirement of residence in the county of the venue, which residence is fundamental in the qualifications of a juror. It is from this list that the petit juries for the different terms of court are prepared or drawn and then notified by the Sheriff.

It is a frequent occurrence that from the time the official enrollment books are closed and the preparation of a "list of such qualified male electors" completed by the jury Commissioners there will be removals from the county of male electors on the list, and such removals occur after the preparation of the list and before the drawing of the petit juries. The jury Commissioners have the right to act upon the assumption that the male electors whose names appear upon the enrollment books are residents of the county; otherwise it would be imposing upon them an almost impossible task of checking the residence of each man on the "master list". And likewise the jury Commissioners act upon the same assumption in the drawing of petit juries, unless there is actual knowledge to the contrary. It is difficult to understand why an attorney should be charged with a greater degree of diligence than those men whose statutory duty it is to prepare lists and juries of male electors.

The situation is not the same as where a juror does not present his registration certificate or have one in his possession, for the enrollment books list the names of those who have been issued the certificates, and the elector's status as to a registration certificate is not subject to change during a ten-year period from the date of the certificate, but

his status as to residence may change at any time. In the discussion of diligence on the part of anyone in discovering the disqualification of a juror it is apparent there is a fundamental difference in the ownership of a registration certificate and residence of the owner or holder, for the former is static for at least ten years while the latter is changeable at any time. It would be most unfortunate for the rule of due diligence to require an attorney to go into the towns, cities, highways and byways to investigate the residence of those called to serve upon juries for such activity on the part of the legal profession would tend to create grave suspicion that evil influence was in the process of being exercised upon the prospective jurors. This Court, ever vigilant in the protection of the rights of all, and jealous of its own honor and integrity, should likewise be alert not to place upon the legal profession a duty which would even create the appearance of evil.

The Legislature did not so intend when it passed Section 639, Code of 1942, nor did that Body change the scope of the due diligence rule in the passage of the Act, which Section is as follows:

"All objections to jurors called to try prosecutions, or actions or issues, or questions arising out of actions or special proceedings in the various courts of this State, if not made before the juror is empaneled for or charged with the trial of such prosecution or action, or issue, or question arising out of actions or special proceedings, shall be deemed waived; and if made thereafter shall be of none effect."

The foregoing Section has application only to disqualifications of jurors which are known to counsel before trial or could have been ascertained with due diligence. It would indeed be a paradox to place upon the members of the legal profession a greater duty than upon the officials directly charged by the Statutes of this State to prepare, draft and summon qualified jurors.

The 1939 amendment to Section 608 provides that the Presiding Judge "shall at each term of Court, ascertain the

qualifications of jurors by having them present to the Clerk of Court their registration certificates, or other satisfactory evidence that they are qualified electors: * * *" When counsel for appellant presented to the trial Judge—the highest authority—information that one of the jurors was not qualified, he proceeded to act by having the Clerk of Court check the mileage as given by the juror with the alleged residence, which mileage checked. The trial Judge concluded that the juror was qualified and he was the sole and highest authority on the issue. Although counsel for appellant, as well as the trial Judge, assumed the alleged address was correct, nevertheless the decision as to the qualification of the juror rested upon the Court, not counsel. When the address proved to be incorrect it became the duty of the trial Judge to correct his error though made in good faith and based upon a false but unknown premise. The writer cannot agree that counsel should have pursued the matter to the extent of demanding that the trial Judge call the juror from the jury room to be examined as to his residence since the trial Judge had concluded that the juror was qualified and this conclusion or assumption was a ruling by the Court on the point, and made in conformity with the 1939 amendment to Section 608. Had counsel for appellant gone to the Clerk of Court upon receipt of the information, instead of the trial Judge, and stopped with the investigation as made by the Clerk, then he could have been charged with lack of diligence by not requesting the examination of the juror; but he went direct to the Presiding Judge and placed the question in his hands.

It necessarily follows that Section 639, *supra,* is not controlling nor designed to control the state of facts as found in this case. Neither is the case of *State v. Amburgey,* 206 S. C., 426, 34 S. E. (2d), 779. In that case the question was not about the residence of a juror, but as to his failure to have a registration certificate, and at this point we refer again to the vital difference between residence as a qualification for a juror and the possession of a registration certificate. One of the jurors, W. B. Perry, was not a registered

elector but he had the same initials as a qualified elector who resided in the same county. His failure to possess the certificate was not discovered until later during the week when a jury was called in another case. At the opening of the term of court the Presiding Judge did not ascertain if any of the petit jurors were qualified electors, nor was he requested to do so by defense counsel at this time or at any other time. The jurors were presented and separately examined upon their *voir dire* and counsel for the defense exercised the right granted by the Court of asking questions of jurors as to qualifications, but did not ask any question with reference as to whether this (or any other) juror was a qualified elector. This Court held that counsel for the defense "having failed to make any timely suggestion to the presiding Judge that he should have the jurors present to the Clerk of Court their registration certificates or other satisfactory evidence that they were qualified electors, waived such requirement". Counsel for the defense in the *Amburgey case* did not make any efforts towards ascertaining the qualifications of the jurors, and in failing to do so, particularly in failing to request the trial Judge to have the jurors present to the Clerk of Court their registration certificates, waived such requirement; and it is likewise apparent that counsel could easily have requested the trial Judge to have the jurors to present their registration certificates, and the fact that one juror was not qualified in that respect would have been discovered then and there, which case falls by the majority holding of the Court, within the lack of due diligence rule.

The case of *State v. Logue,* 204 S. C. 171, 28 S. E. (2d), 788, is likewise of no force and effect in the present instance. Logue, the appellant, was convicted of murder and moved for a new trial on the ground that the trial Judge failed to comply with Section 608 of the Code of Laws of 1942, in that he did not ascertain the qualifications of the jurors by having them present to the Clerk of Court their registration certificates or other satisfactory evidence that they were qualified electors, which motion was refused. It appears from the opinion in the case that although the trial

Judge did not ascertain the qualifications of the jurors in accordance with Section 608, there was nevertheless no timely suggestion made to him by counsel that this be done, *and there was no showing whatsoever that any of the jurors were in fact disqualified.* Therefore, it was presumed that all the jurors were qualified electors.

It is true in this case the lack of residence on the part of Mr. Stokes to make him a qualified juror could have been discovered if counsel had gone out and checked the residence of each and every juror called for that term of court, but that is not and should not be required of counsel as a part of their diligence in representing litigants. As stated by the late Chief Justice Bonham while acting as Associate Justice, in the case of *State v. Elliott,* 169 S. C. 208, 168 S. E., 546-548, "the Constitution guarantees to every person a fair and impartial trial by a jury of his peers. It cannot be said that one has had such trial if there has sat on the jury one who is expressly disqualified to sit there; * * *"

The lack of qualification of the juror was brought to the attention of the trial Judge and he concluded that such juror was qualified, but such conclusion or ruling was made upon an erroneous state of facts, which error was not brought to light until after the case was concluded. When the true residence was discovered it then became the duty of the trial Judge to in effect reverse himself and grant a new trial.

The judgment of the lower Court should be reversed and the case remanded to that Court for a new trial.

Mr. Associate Justice Taylor concurs.