ERVIN v. STATE.

(Division A. Dec. 4, 1933.)

[151 So. 177. No. 30740.]

146

John T. Smith, of Cleveland, for appellant.

148

**W. D. Conn, Jr.**, Assistant Attorney-General, for the
state.

**McGowen, J.**, delivered the opinion of the court.

On an indictment for murder in the killing of one Annie Ervin, the appellant, William Ervin, was tried, convicted by the jury, and by the judgment of the court was sentenced to life imprisonment, from which an appeal is here prosecuted.

According to the evidence offered for the state, the appellant shot and killed his mistress, or common-law wife, not in self-defense, and at a time when he was in no real or apparent danger of suffering any bodily harm at the hands of the deceased—a case of deliberate murder.

The evidence offered for the appellant was to the effect that there was a loaded shotgun in the room at the time he fired; that Annie Ervin was making an effort to get this gun; and that he fired in self-defense. He also testified to some threats that had been made against him by the main witness for the state, a sister of the deceased.

Annie Ervin had left the appellant and he was seeking a reconciliation and to have her return and resume their former relations.

■ We think it is unnecessary to discuss the facts, as the evidence offered for the state, and that offered for the appellant, created a conflict which raised a question essentially for the jury to settle, and we cannot disturb the verdict and judgment.

■ On a motion for a new trial, there was some contention that there was a separation of the jury due to the fact that some of the jurors played bridge with the bailiff in charge of the jury on a platform near the door of the jury room, in sight thereof, and within a few feet of the other jurymen, some of whom were awake and some asleep. It was shown that there was no improper influence exerted upon any of these jurors while this bridge game was in progress, if it can be said to have been a separation of the jury. There is no merit in that contention.

■ After the conviction, the appellant moved for a new trial based mainly on the separation of the jury, which motion the court overruled. Subsequently, another motion for a new trial was made on the ground that one of the jurors had formerly been adjudicated a lunatic and had been confined for three months in the state hospital for the insane; that this occurred in May, 1931; and that, in August, 1931, after he had been permitted to leave the hospital for the insane, a guardian of his estate was appointed for this juror, whose name was Clay. No certificate, as authorized by section 4583, Code 1930, had been given to him. Affidavits were filed by the appellant's counsel setting forth that neither of them knew of this juror being insane before, at the time, or during the trial of this cause. The court heard the motion and witnesses were examined, some of whom were of the opinion that Clay was still insane, and some that he was restored to his right mind and was fully capacitated to serve as a juror. He had served on another jury at that term of

court, and had acted as bailiff at a preceding term of court. When the examination by counsel for the state was being developed, counsel for the appellant made this statement to the court:

"If the court please, counsel has asked several questions, evidently under the impression that I, John T. Smith, one of the attorneys for this defendant, was claiming that I had never heard that Mr. Clay had had mental trouble, and had been in the asylum. In fairness to the court and to counsel, I want to state that I had made no such claim or pretense. In other words, I want the record to show that I knew, and I take it nearly everybody who knew Mr. Clay before he had this mental trouble, knew that he had that trouble, but I do make affidavit here, and this is true, that I didn't know he had ever had a guardian. I didn't know but what he was entirely discharged from any disability until after the motion for the new trial had been overruled this afternoon."

The voir dire examination of Mr. Clay discloses that counsel did not examine him at all with reference to his mental capacity to serve as a juror.

This statement of counsel for the appellant is quite sufficient to show that he had adequate knowledge to put him on inquiry as to the mental capacity or qualifications of Mr. Clay at the time he was being impaneled for the trial of this cause.

Under this state of facts, we must conclude that either counsel for the appellant, for the moment, forgot what he knew about the insanity of Mr. Clay, or that he concluded to take the chance of a trial before that particular jury, and that, having done so, the appellant must now be held to abide the consequences. Counsel waived the lack of mental capacity of the particular juror, which is, by no means, the equivalent of trying the defendant before a jury composed of less than twelve men.

No new trial can be granted under this state of the record. See Brown v. State, 60 Miss. 447; Lipscomb v. State, 76 Miss. 223, 25 So. 158; Fulcher v. State, 82 Miss.

630, 35 So. 170; Grady v. State, 158 Miss. 134, 130 So. 117; Hilbun v. State (Miss.), 148 So. 365, and 20 R. C. L. 241. The Fulcher Case supra is squarely in point.

In further support of the view here adopted that the appellant is not entitled to a new trial, the adjudication of insanity was only prima facie, and not conclusive, evidence, and the court went into the matter fully and determined that Clay was not disqualified because of his former insanity. The court was fully warranted in finding, from the evidence adduced, that the juror was mentally capable of performing the functions of a juror. We are of opinion that Clay stood a rather rigid examination by the trial court as to his mental capacity, and his recollection of the events of the trial. See 46 C. J. 89, section 48, note 4.

We find no reversible error in this case.

Affirmed.