13762

STATE v GREGORY *ET AL.*

(172 S. E., 692)

536

Messrs. Sidney S. Tison, Solicitor, M. J. Hough, George K. Laney, J. Arthur Knight and C. L. Hunley, for appellant,

Messrs. P. A. Murray, Jr., and Mendel L. Smith, for respondents,

January 31, 1934.

The opinion of the Court was delivered by Mr. Chief Justice Blease.

The respondents, George W. Gregory and Thomas T. Gregory, charged with the murder of J. T. Nicholson, in the Court of General Sessions for Chesterfield County, were

found guilty of manslaughter by the jury at the September, 1932, term, and sentence was imposed upon them by the presiding Judge, Hon. W. H. Townsend. Thereafter, on March 24, 1933, their motion for a new trial, made before Hon. P. H. Stoll, Circuit Judge, then presiding in the fourth judicial Circuit, in which Chesterfield County is included, was heard. On some later day, evidently, the date not appearing in the record, Judge Stoll passed an order, granting the motion of the respondents, and from that the State has appealed.

The grounds and reasons moving Judge Stoll in the conclusion he reached, were that certain members of the trial jury that convicted the respondents were not registered electors of the County of Chesterfield at the time of their service as petit jurors therefore, not being qualified as jurors under the constitutional provisions; that due diligence was exercised by the attorneys for the respondents before their trial to ascertain the status of the jurors; and that the conviction should be set aside under the authority of the case of *State v. Elliott,* 169 S. C., 208, 168 S. E., 546.

In the statement of facts, contained in the record, it is disclosed that all the prospective jurors, called in the trial, were examined on their *voir dire,* and that the respondents exercised their right of peremptory challenge to only eight men, although they were entitled, under the law, to twenty such challenges.

In his order, Judge Stoll said, "An affidavit, which is not contradicted as to number, shows that eight of the trial jurors were not qualified registered electors."

At the hearing of the motion, there were submitted in its support an affidavit of the respondent George W. Gregory, and two affidavits of P. A. Murray, Jr., Esquire, who represented the respondents in their trial.

The substance of the affidavit of Gregory, the date of which does not appear, was to the effect "that it is a matter of common knowledge in Chesterfield County" that the

registration books of the county for 1928 were in the hands of Parnell Meehan, and some time during that year they were lost or disappeared, and had not been found; that Gregory, the affiant, was "at a loss to know how the jury commissioners could have prepared in December, 1931, a jury list for use during the year 1932 without the registration books"; that he was informed and believed that one of the jurors in his case was registered in Marlboro County in 1928, but did not register in Chesterfield County until September 29, 1932, according to the date on his certificate; that from information furnished to him by Dorman, the clerk of the board of registration, eight other named jurors, who tried the case, were not registered at the time of the trial.

The first affidavit of Mr. Murray, dated February 28, 1933, showed that, after the trial and conviction of the respondents, Mr. Murray, in conversation with the Clerk of Court of the county, who is one of the jury commissioners, asked that official the question how the jury commissioners made up the list of jurors in December, 1931, for service during 1932, when the registration books of the county had been misplaced or lost, and that the clerk laughingly said that the commissioners "simply had to do the best they could."

The second affidavit of Mr. Murray, dated March 24, 1933, was, in substance, to the following effect, that just before the September term of Court, at which his clients were tried, Mr. Murray, who lives in Cheraw, went to his county seat, Chesterfield, for the purpose of ascertaining definitely "as to whether the general rumor to the effect that the 1928 registration books had been lost was true"; his inquiry "around the court house" brought the information that the books could not be found; and that new books of registration, in the charge of Mr. Dorman, the clerk of the registration board, were opened about the time the September, 1932, term of the Court convened.

The only showing made by the State was contained in the affidavit of J. Arthur Knight, Esquire, one of the attorneys assisting the solicitor in the prosecution. Mr. Knight swore that on February 12, 1930, L. J. Dorman was duly commissioned a member of the board of registration, as successor to Parnell Meehan; that shortly thereafter books of registration were opened, and had been kept opened continuously, except at such times as they were closed in compliance with the law; that, on his information, the duplicate copies of the books were not made up and filed in the office of the Clerk of Court until 1932; but as a matter of fact, to the own knowledge of Mr. Knight, the books of registration were continuously open from 1930, and that for most of the time the books were in the office of the Judge of Probate for the county; and "the status of the condition in reference to registration has been common knowledge since 1929."

At the outset, we are confronted with a question made by the respondents as to the exceptions of the appellant. Citing numerous decisions, among them the recent ones of *White v. Railway Co.,* 121 S. C., 215, 114 S. E., 324; *State v. Bigham,* 123 S. C., 411, 117 S. E., 57, and *State v. Wells,* 162 S. C., 509, 161 S. E., 177, the respondents contend, and we think properly, that the question as to whether a new trial should be granted, for the reasons upon which the order of the Circuit Judge was based in this case, is addressed to the sound discretion of the Judge, and unless some rule of law is violated, or there has been an erroneous exercise, or abuse, of the discretion committed to him, his decision is not subject to appellate review. The respondents say the exceptions do not meet the requirements, in that they do not charge an abuse of discretion, or that the discretion exercised was based on an error of law. We must admit that the exceptions are rather general, and they do not, in plain language, charge an abuse of discretion, or a wrongful exercise of discretion based on

legal error. But this Court has always been very liberal, perhaps too much so, in the consideration of exceptions. In the first exception, the appellant charges error in the granting of the new trial, on the ground that several of the jurors were not registered electors, "when the circumstances causing such situation were known before the trial to the defendants and their attornies, and no question thereabout was raised until after an adverse verdict." The second exception says that the Judge erred in granting the new trial "as set out in his order," when it appeared that the jurors, although examined on their *voir dire,* were not questioned as to their registration as electors at the instance of the respondents. We construe the language of both exceptions, wherein, "error" was charged, as meaning the error known to our practice in appeals of this character, that is, the erroneous exercise of the discretion of the Judge as a matter of law, or the erroneous abuse of the discretion committed to him, under the law, as to the facts before him. Accordingly, we entertain the exceptions. Both of them may be disposed of together.

We are in thorough accord with the position of the respondents, which was upheld by Judge Stoll, that the respondents in their trial, in the Court of General Sessions, were entitled, as a matter of right and law, to be tried by twelve jurors, qualified under the law to act as jurors in their case, and that one of the necessary qualifications was the registration of each and every juror as a qualified elector of the County of Chesterfield. See *State v. Rector,* 158 S. C., 212, 155 S. E., 385, and the several cases therein reviewed.

We are compelled, nevertheless, to hold that there was manifest error, so much as to amount to an error of law, and the wrongful exercise of the discretion committed to him under the law, in the holding of the Circuit Judge that due diligence was exercised on the part of the respondents in their efforts to ascertain before the

jurors were sworn their disqualification to sit in the case. Clearly, under numerous decisions of this Court, so very many that it is useless to cite them (see annotation under Section 639 of the Code), a party, in his trial, who fails to exercise due diligence in discovering the disqualification of a juror, before the empaneling of the jury, cannot, after the rendition of a verdict adverse to him, rightly ask the Court to disturb that verdict. This Court, time after time, has disapproved the quiet sitting of a party, with information already obtained, or which could be easily obtained, as to the disqualification of a juror, taking his chances, ready to acquiesce in a favorable verdict, and more ready to move the setting aside of an unfavorable one. The provisions of Section 639 of the Code say that objections to jurors, not taken before the jury is empaneled, "shall be deemed waived; and if made thereafter shall be of none effect." The Court has construed the language of the section to mean such objections of which the party had knowledge, or which by the exercise of due diligence he could have known.

Under the law (Section 2285 of the Code), the board of registration is required to deposit the books of registration in the office of the Clerk of the Court of their county; and the books are "open to the inspection of any citizen at all times"; they are not to be removed from the office of the Clerk of Court by any person, except the board of registration, "who are authorized to take and keep the same as long as may be necessary to enable them to perform the duties" imposed upon them in the registration of electors; and the books are to remain in the office of the Clerk of Court, or in the office of the board of registration, except when used in the several polling precincts, as required by law.

The jury commissioners of a county, who are the County Auditor, County Treasurer, and the Clerk of the Court (Section 607 of the Code), are required in the counties generally, including the County of Chesterfield, in the month of December of each year, to prepare a list of

qualified electors, "under the provisions of the Constitution, between the ages of twenty-one and sixty-five years, of good moral character, of their respective counties" (Section 608), from which list the jurors in the succeeding year are to be drawn. It was indicated by this Court, in the case of *State v. Rector, supra,* that the commissioners. in the preparation of the list of jurors, should consult the registration books of the county, for the purpose of ascertaining if the persons so selected by them are registered electors, and it was pointed out that the books were easily accessible to them. But we have not been cited to any provision in the laws, nor have we found any in our own examination, which requires the jury commissioners to consult the registration books.

It does appear from the facts as stated in the affidavits submitted in this case that the registration books of Chesterfield County disappeared in some way in the year 1928. In the affidavit of Mr. Knight, it was stated that this condition had been "common knowledge since 1929." That statement of Mr. Knight is not disputed. The undated affidavit of the respondent George W. Gregory said, in effect, that the disappearance of the books in 1928 "is a matter of common knowledge in Chesterfield County." The statement of that respondent does not contradict the statement of Mr. Knight that the "common knowledge" had commenced in 1929. The affidavit of the respondent Gregory fails absolutely to disclose when the facts as to the registration books of 1928 became "common knowledge," or when they were brought to his attention. His affidavit fails to show that he only discovered the conditions as to the registration books after his trial. On the contrary, in the face of the positive statement of Mr. Knight, and the doubtful language of Gregory, we think it is clear that Gregory knew before his trial that the 1928 registration books had disappeared. Mr. Murray, of counsel for the respondents, knew before the trial that there was a rumor to the effect that the 1928 registration books had been lost, for, in his affidavit, dated March 24, 1933, he

said that just before the September term (referring to the Court at which the respondents were tried), he "went to Chesterfield for the express purpose of ascertaining definitely as to whether the general rumor to the effect that the 1928 registration books had been lost was true." And, further, he swore that his inquiry resulted in his being informed "that the books (those of 1928), could not be found."

The sworn statement of Mr. Knight that new books of registration were opened up by the board of registration in 1930, around two years before the trial, in the Court of General Sessions, of the respondents, and that they had been continuously kept open for registration until the date of his affidavit, April 25, 1933, is nowhere disputed in the record.

The statements of Mr. Murray as to his inquiry about the registration books were very indefinite. First of all, he only inquired about the books of 1928. He made no inquiry whatever, so far as his affidavit discloses, as to any other registration books. The "inquiry" he did make was only "around the court house." It does not appear definitely that he asked the Clerk of the Court, who is the custodian of the registration books when they are not in the hands of the members of the board of registration, or at the polling precincts, where any of the books, those of 1928 or later books, might be found. His affidavit fails to show that he asked any one of the three members of the board of registration, who are supposed to be in charge of the books when they are not in the office of the Clerk of Court, or at the polling precincts, where any of the registration books, those of 1928 or later books, might be seen.

Furthermore, the affidavit of Mr. Knight stated, and there is no contradiction of the statement anywhere, that since 1930, for almost all the time, the registration books had been in the office of the Judge of Probate of Chesterfield County. Since we must assume, when there is no proof to the contrary, that the members of the registra-

tion board, as public officials, acted properly in the performance of their duties, we must think that the board, in the discharge of those duties, at some times, and perhaps very often, used the office of the Judge of Probate in their work, for, in only a few counties of the State, a fact of which this Court may take judicial notice, when there is no contrary proof, the board of registration does not have set apart to it in our courthouses a regular and exclusive office. The place where the registration board meets, however, for the registration of voters, is generally known "around the court house," and the county officers, with offices in the courthouse are, generally, very accommodating, in informing those seeking information as to the place of the meeting of the board, in the matter of giving the desired information. Mr. Murray, in his affidavit, failed to state if he made inquiry of the Judge of Probate, or any other county officer.

The "Supply Bill" of Chesterfield County for the year 1930, Acts of that year (36 St. at Large, p. 1669), with regard to the payment of the amount fixed for the service of the board of registration of the county, contained a provision that such amount was "to be paid after Books of Registration in duplicate has (have) been duly filed in the Clerk of Court's office as required by law." It is evident that this provision was made because of the situation surrounding the registration books of that county, and of the provisions of the Act all the citizens of the county were supposed, under the law, to have due and timely notice.

A very significant thing, too, showing entire absence of any due diligence on the part of the respondent George W. Gregory is disclosed in the affidavit he made. Therein, he stated that the information he had obtained, as to eight of the trial jurors not having been registered, came from L. J. Dorman, clerk of the county board of registration. While the affidavit does not state when the affiant received the information, we assume that it was given after his trial and conviction. From the affidavit of Mr. Knight, it is found

that Dorman became a member of the board of registration on Febuary 12, 1930, two and one-half years prior to the trial. Evidently, from that time on to the date Mr. Dorman gave the information about the jurors not being registered to Gregory, Mr. Dorman had been continuously a member of the registration board. If these jurors were not registered prior to the time for entering upon their service as jurors in the trial, Mr. Dorman had the same information, as to their noneligibility to act as jurors, as that which he gave Gregory after the trial. The fact that after the trial he gave the information to Gregory is, with nothing to the contrary, entirely sufficient to show that if Gregory had inquired of Mr. Dorman, after the jury for the Court had been drawn, and before the trial was had, Mr. Dorman would have given the same information that he later gave. It seems a fair and reasonable inference that Gregory was not so much interested beforehand as to the qualification of the jurors who were to try him, as he was after twelve of those jurors had convicted him; and, surely, if he had displayed the same diligence prior to his trial that he exercised after his conviction, he would have been fully informed that a number of the jurors were not registered electors.

Clearly, then, very little, if any, diligence was exercised in the matter of locating the registration books. The little effort made in that direction applied only to the books of 1928. No search or inquiry was made as to the new books opened in 1930, and, clearly, there was not the due diligence required, under the law, in the matter of ascertaining the location, for proper examination, of the registration books of Chesterfield County by the respondents or their counsel prior to the time of the trial of the respondents.

With the information on the part of one of the respondents, and the attorney for both of them, before the trial of the respondents, that there had been irregular conduct of one of the members of the board of registration in the handling of the books of registration, and that the books for

1928 had "disappeared," as the record here clearly discloses, yet, at no time during the session of the Court at which the respondents were tried was the situation as to the registration books called to the attention of his Honor, Judge Townsend, who presided in that Court. If the matter was of such importance as to deny the respondents the fair and impartial trial to which they were entitled, under the law, the respondents could have moved the Court to quash the jury venire, and this they failed to do.

If the respondents did not care to take the suggested step, however, and only wished the demand that the jurors who tried them should be qualified electors, under the provisions of the Constitution, very easily and properly, they could have asked the presiding Judge to make inquiry as to the registration as electors of all the jurors presented, or only as to any particular juror. No request for inquiry as to the registration of jurors was made. It is urged in argument that a request of this character would have resulted in "running the risk of offending some of said jurors," who were presented to the respondents, "and thus endangering the cause" of the respondents. We cannot agree with that position. The presiding Judge, Hon. W. H. Townsend, in his usual affable and pleasant manner, could have asked the necessary questions without offending a juror. Moreover, he could have asked the Clerk of the Court, in attendance upon the Court, a member of the jury commissioners, a custodian of the books of registration, as to the facts regarding the registration books.

It seems perfectly clear, therefore, to us that the respondents have absolutely failed to show the exercise of the due diligence required of them, under the law, before they are entitled to a new trial because of the participation on their jury of jurors who were not registered electors, for everything known to them and their attorneys after the trial was known, or could have been easily ascertained, by the exercise of even a little diligence before the trial. And

they displayed, also, a lack of proper diligence when they failed to bring to the attention of the Court, before their trial was entered upon and the jury had been sworn, the facts which, clearly, were in their possession as to the condition of the registration books. Again, they failed to even ask that inquiry be made as to the qualifications of the jurors, when they had plenty of opportunity to take that step.

The learned Circuit Judge, who granted the motion for a new trial, failed, in our opinion, to distinguish the facts of the recent case of *State v. Elliott, supra,* from those shown in this case. In *Elliott's case,* the sole counsel for the defendant, who did not reside in the county where the trial was to be held, applied, before the convening of the Court, to the Clerk of the Court, one of the jury commissioners, for information as to the qualifications of the jurors who had been drawn for service. The clerk, although custodian of the records and bonds pertaining to the office of constable, failed to inform the attorney that one of the veniremen was a bonded constable of the county, which position disqualified him, under the law (Section 627 of the Code), as a juryman. The constable became a member of the trial jury. After the trial and conviction, and not until then, did the defendant, or his counsel, receive information as to the disqualification of the juror; nor were they acquainted with sufficient facts to put them upon such notice as to require further inquiry than that which had been pursued before the trial. This Court, holding that there was due diligence on the part of the defendant's attorney, granted a new trial.

" 'Abuse of discretion' does not mean any reflection upon the presiding Judge, and it is a strict legal term, to indicate that the appellate Court is simply of the opinion that there was commission of an error of law in the circumstances." *Barrett v. Broad River Power Co.,* 146 S. C., 85, 143 S. E., 650, 654.

Finding error of law in the holding of his Honor, Judge Stoll, as to due diligence, it is the judgment of this Court that his order, granting the respondents a new trial, be, and the same is hereby, reversed.

MESSRS. JUSTICES STABLER, CARTER and BONHAM and MR. ACTING ASSOCIATE JUSTICE W. C. COTHRAN concur.