STATE v. GUYNN.

No. 5597. Decided September 7, 1935. (48 P. [2d] 902.)

H. G. *Metos,* of Salt Lake City, for appellant.

*Joseph Chez,* Atty. Gen., and *Zelph S. Calder,* Deputy Atty. Gen., for the State.

FOLLAND, Justice.

Defendant was convicted of riot and appeals. He relies on three assigned errors as grounds for reversal of his conviction: (1) That the information does not state any public offense because it lacks particularity in certain respects; (2) misconduct on the part of one of the jurors; and (3) failure in instructing the jury with respect to the time of the alleged offense. This prosecution was the outgrowth of a strike by coal miners at Spring Canyon in Carbon county, Utah, during the month of August, 1933. The defendant was an organizer of the National Miners Union, one of two local unions in the camp, and was one of the leaders in the strike.

We shall first consider the second assigned error. After verdict defendant made a motion for a new trial, supported by affidavits, wherein he charges misconduct on the part of one of the jurors, one R. L. Lovelace. The following excerpt from the affidavit signed by defendant's counsel sets forth the facts:

"That one of the jurors selected to sit in the above entitled action was R. L. Loveless; (Lovelace) that the said R. L. Loveless was also foreman of the said jury which brought in the verdict in the above cause; that upon voir dire examination of the said jury he was asked by the court if any relationship of master and servant existed between him and the complaining witness S. M. Bliss, Sheriff of Carbon County, and the said juror stated that there was none;

"And he was further asked if he had ever acted as deputy sheriff under said complaining witness, and he said that he had not, that he

had never been a deputy sheriff under the said Sheriff Bliss, and that during the strike he was a watchman for the Standard Coal Company.

"He further answered that he was not biased or prejudiced against the defendant or the National Miners Union, of which the defendant was a member; that he had never expressed an opinion about the case, or the strike, and that he did not have any prejudice against the said Union or its members, and that he had never made any statement to anyone concerning the National Miners Union, the members thereof, or the defendant in the case.

"That during the trial of the above entitled cause and at the time defendant was putting on the stand witnesses and adducing testimony in his defense, one Raymond Tuscon was called as a witness by the defendant, and after said witness had given his testimony he informed affiant that the said R. L. Loveless was a deputy sheriff under the said S. M. Bliss, the complaining witness in this case, and that the said juror R. L. Loveless had stopped the said Tuscon and other members of the National Miners Union when about to enter Standardville, Utah, and the said Raymond Tuscon inquired of affiant why the said Loveless was allowed to sit on the jury.

"That immediately thereafter said affiant took the said Raymond Tuscon into the judge's chambers and conferred with Judge George Christensen, sitting upon the case, and District Attorney F. W. Keller, counsel for the State; and the said Tuscon was brought in before the Judge and District Attorney and asked to state what he knew about the said juror R. L. Loveless, and the said Raymond Tuscon told them what he had told affiant about said juror.

"That said Judge George Christensen stated that nothing could be done at that stage; that affiant further investigated the matter concerning the qualifications of the said R. L. Loveless to sit as a juror; that on or about March 5, 1934, while the jury was being empanelled in the case of *State of Utah* v. *Paul Crouch,* another member of the National Miners Union, the said R. L. Loveless was drawn as a prospective juror to sit in said case.

"That upon examination under oath of the said Loveless by affiant, he stated that he had been appointed deputy sheriff about August 17, 1933, and was one of the deputies of the said sheriff S. M. Bliss, the complaining witness in the case of *State of Utah* v. *Charles Guynn;* that so far as he knew he was still a deputy sheriff under the said Sheriff Bliss, and that up to that time he had never been informed that he had been discharged as such deputy sheriff; that he had been

appointed as such deputy to stop any members of the National Miners Union from coming into Standardville, and that he had stopped a number of them who were entering said town, and that as such deputy, his chief duties were to act in event there was any trouble done by the said National Miners Union and its members.

"Said juror was questioned by affiant as to whether or not he had expressed an opinion concerning the National Miners Union and the members of it, and defendant in the above entitled case, and said juror answered that he had 'lots of times. Not only here, but over in Europe, when I was there; it was the same outfit. When I was in France.'

"Q. And isn't it true that on one occasion in a certain store—I think your wife was present—you made the statement that the National Miners Union were a bunch of reds and ought to be run out of the country? A. That's exactly what I said.

"Q. And isn't it true that you have on numerous occasions made the same statements that you made in the store, to divers persons—several persons; that the leaders, defendants Guynn, Crouch, and Wetherbee, were a bunch of reds and ought to be run out of this country, and that is what you think of the National Miners Union and the members of it? A. Exactly.

"Q. And that is what you thought about this Union and the members of it since August 17th, and subsequent to that time and up to now? A. Yes, a long time before that.

"Q. Do you honestly believe, Mr. Loveless, that with the opinion you have of the National Miners Union and the members of it, which includes this defendant, that they are a bunch of reds and should be run out of the country to Russia; that you can fairly and impartially pass upon the evidence in this case? A. Do you say upon the evidence? Yes, I can pass upon the evidence.

"Q. Although you have that opinion in your mind? A. That doesn't make any difference; I can pass upon the evidence in this case."

The pertinent facts were not denied by the juror named or by any one else. Affidavits of the district attorney and of the official court reporter were filed, but these did not deny the allegation that the juror was asked by the court if he had ever acted as a deputy sheriff under the complaining witness, and he said he had not and that he had never been a deputy under Sheriff Bliss. The affidavit of

the district attorney sets out that the juror on voir dire examination said that at the time of the strike in Spring Canyon he was employed as a night watchman or mine guard at the town of Standardville, and that the duty which he performed consisted in acquainting himself with the purpose, so far as the same could be ascertained, of all persons who entered the town of Standardville during the strike; that notwithstanding it appeared, in the manner stated, that Lovelace was an officer during the strike, that defendant's attorney, although given opportunity so to do, made no further inquiry of the juror respecting this particular matter; that the defendant's counsel examined the jurors collectively and did not examine Mr. Lovelace individually; that in the course of the trial defendant's counsel in judge's chambers produced a man who stated that the juror Lovelace was an officer during the strike; and that thereupon said attorney asked the court to declare a mistrial to which the judge answered that it had been developed in the examination that the juror was a night watchman and guard during the strike, and that therefore nothing could be done at that time respecting the matter. The affidavit of the court reporter was corroborative of the fact that the juror had stated, in substance and effect, that during the strike he had served as a night watchman and mine guard at the town of Standardville. It also shows the examination made by the judge of the jurors had not been taken in shorthand notes.

The juror was subject to challenge for implied bias under subdivision 2 of section 105-31-19 because of his position as deputy sheriff, the sheriff of the county being the person "on whose complaint the prosecution was instituted," and also for implied bias under section 105-31-18, ∎ both R. S. Utah 1933, because of his state of mind with respect to the union to which defendant belonged. The defendant was entitled to a trial by jurors having no bias or prejudice against him or the particular group or union with which he was identified. 35 C. J. 330. He was also entitled to be tried by jurors who were not employees or

deputies of the prosecuting witness. *Gaff* v. *State,* 155 Ind. 277, 58 N. E. 74, 80 Am. St. Rep. 235. A juror who entertained such strong feeling respecting the National Miners Union and its organizers as indicated by the answers of Mr. Lovelace on voir dire examination in the trial of *State* v. *Crouch,* and who was at the time of the strike and the trial a deputy sheriff, was hardly in such a frame of mind as to fairly and impartially try the defendant.

The argument made by the state in support of the court's order denying a new trial is that the defendant failed to use due diligence in his examination of the juror because his examination was of the jury collectively and not of each one separately, and that he did not pursue the subject when the juror answered that he had been a night watchman and guard at Standardville. The state relies on the case of *People* v. *Lewis,* 4 Utah 42, 5 P. 543. It was there held, quoting the headnote, that:

"The fact that one of the jury who tried defendant was one of the grand jury that found the indictment against him, where no question was asked of such juror touching the point, and no challenge for cause made, is not ground for granting a new trial."

The only point of resemblance in the cases is that defendant's counsel in the instant case, as in the Lewis Case, examined the jurors collectively rather than individually. It is made to appear, however, by affidavit, and this is not denied, that the trial judge did ask the juror if he was a deputy under Sheriff Bliss and that he replied he was not. The Lewis Case is therefore not in point for the reason that it appears that the matter upon which a challenge would rest was called to the attention of the juror and he denied that such relationship existed. We think there can be no question but had these facts been developed on examination of the juror he would undoubtedly, on challenge, have been excused from participating in the case. In 16 C. J. 1152 the general rule is said to be that anything which is good cause for challenge is good cause for a new trial if not known to the party or his counsel before verdict. In this case it ap-

pears that the information came to defense counsel before verdict that the juror was a deputy sheriff. He called the matter to the attention of the judge in chambers and asked for a mistrial which was denied. This motion and the court's ruling were not made a matter of record, and the ruling is not directly before us for review except as it is incidentally before us in reviewing the court's refusal to grant a new trial. The facts alleged not being denied, there is no conflict in the evidence about which the trial judge, on motion for a new trial might exercise discretion as in *State* v. *Draper*, 83 Utah 115, 27 P. (2d) 39. The only question, therefore, is one of law whether such showing of disqualification on the part of the juror entitled the defendant to have his motion for a new trial granted. The incompetency of a juror is ground for a new trial, when discovered after verdict, where he denied the ground of his incompetency on his voir dire examination. 16 C. J. 1159; *State* v. *Thompson*, 24 Utah 314, 67 P. 789; *Tarpey* v. *Madsen*, 26 Utah 294, 73 P. 411. We think a new trial should have been granted by the trial court, and that it was an abuse of discretion to refuse the motion on the showing made. For this reason the judgment of conviction must be reversed and a new trial ordered.

We need not discuss at length the third assignment of error. The court charged the jury that the crime charged was alleged to have been committed between the 17th and 26th of August, 1933, as laid in the information, while in another instruction the dates were said to have been between the 17th and 28th of August. From the record it might be concluded that the court did, and also that the court did not, charge the jury as last above indicated. If such a mistake was made, it was clearly an inadvertence and will undoubtedly not occur on a new trial.

With respect to the first assigned error we think the information states a public offense. The crime of riot is not only charged in the information in the language of the statute, but in addition thereto specific acts are charged as

having been committed, that is, that the defendant and others took possession of the portal of the Spring ■ Canyon mine; that they prevented any and all persons from entering the mine for purposes of employment and did stop all persons attempting lawfully to enter the town of Spring Canyon over the public highway, all of which acts were said to have been done forcibly and with threats to use force and violence accompanied by the immediate power of execution.

The judgment of conviction is set aside, and the cause remanded to the district court of Carbon county for a new trial.

ELIAS HANSEN, C. J., and EPHRAIM HANSON, MOFFAT, and WOLFE, JJ., concur.