UNITED STATES of America ex rel.
Silvio DE VITA, Applicant,

v.

Lloyd W. McCORKLE, Principal Keeper
of the New Jersey State Prison at
Trenton, New Jersey, Respondent.

Civ. A. No. 663–54.

United States District Court
D. New Jersey.

July 14, 1955.

Harold Alper, Newark, N. J., for applicant. Isadore Glauberman, Jersey, City, N. J., of counsel.

Charles V. Webb, Jr., Newark, N. J., Prosecutor of Essex County, for respondent.

MODARELLI, District Judge.

This is an application by Silvio De Vita for a writ of habeas corpus.[1] The determinations in this case also apply to Joseph Grillo. Both men, who are in custody in the New Jersey State Prison, were convicted in a New Jersey state court of murder in the first degree arising out of an armed robbery. Since the jury did not recommend life imprisonment, under the state law[2] the convictions resulted in mandatory death sentences. The third participant in the crime, Ralph Rosania, was also convicted of murder in the first degree but the jury recommended and he received a sentence of life imprisonment. Hence, he did not take an appeal.

On November 9, 1951, Joseph Law, a uniformed special police officer, was shot and killed during a robbery while escorting Thomas Lofrano, a supermarket manager from his store to a bank with the day's receipts. As Law was about to start his car, with Lofrano seated next to him, the door on the other side of the car was opened and De Vita, who was standing close to the side of the car, pointed a gun across Lofrano's stomach. De Vita simultaneously announced, "It's a stickup." Grillo, also armed, opened the door on Law's side. Law raised his hands in response to De Vita's announcement, then there was a shot, Law slumped over the wheel and Grillo reached into the car and took the bag containing the day's receipts. Grillo fired the shot that resulted in Law's death. De Vita and Grillo escaped but were subsequently apprehended.

The chronology of proceedings and legal maneuvers concerning the applicant's commitment prior to this application are:

1. February 25, 1952, the trial of the three alleged participants in the crime was commenced.

2. March 8, 1952, all three were found guilty.

1. 28 U.S.C.A. § 2241 et seq.

2. N.J.S.A. 2A:113–4.

3. December 15, 1952, De Vita's and Grillo's convictions were sustained by the Supreme Court of New Jersey.[3]

4. June 8, 1953, certiorari was denied by the Supreme Court of the United States.[4]

5. July 1, 1953, a New Jersey state court issued a writ of habeas corpus, returnable on July 8, 1953, when a hearing was held.

6. July 14, 1953, the court discharged the writ.[5]

7. October 19, 1953, that judgment was affirmed by the Supreme Court of New Jersey.[6]

8. January 4, 1954, certiorari was denied.[7]

9. March 25, 1954, in a New Jersey state court, Grillo moved for a new trial and oral argument was heard. At this point, the precise questions now raised on this application became involved in the case. The motion was denied.

10. April 15, 1954, De Vita made and the court denied a companion motion for a new trial.

11. June 28, 1954, the Supreme Court of New Jersey affirmed the decisions denying the motions for new trials.[8]

The execution of De Vita and Grillo was set for the week of August 15, 1954. New attorneys having been retained by De Vita, on August 13, 1954, they made three unsuccessful separate applications to Justices Black, Jackson, and Clark for a stay of execution pending application for certiorari.[9]

On August 16, 1954, on the eve of the execution, as is customary in cases of this character, the present application for writ of habeas corpus was made. " * * * Under the circumstances the coming into the federal court was entirely proper." [10] On the same day, this court rendered an oral opinion and refused to grant the writ or to issue an order directing the respondent to show cause why the writ should not be granted.[11] In order to allow an appeal, this court issued a certificate of probable cause [12] and a stay of execution until August 19, 1954.[13]

On November 19, 1954, the Court of Appeals reversed this court's decision—not on the merits of the application, as will hereinafter appear—and remanded the case for further proceedings not inconsistent with its opinion.[14]

Following the receipt on December 20, 1954, of the mandate of the Court of Appeals, this court on January 10, 1955 and April 25, 1955, heard oral arguments by counsel and received into evidence the documentary evidence relied upon by the applicant.[15] As will be discussed, a more extensive hearing is unnecessary.[16]

### The "Record"

The Court of Appeals based its November 19, 1954 decision solely on the

3. State v. Grillo, 1952, 11 N.J. 173, 93 A.2d 328 (One Justice dissented).

4. De Vita v. State of New Jersey, 1953, 345 U.S. 976, 73 S.Ct. 1123, 97 L.Ed. 1391.

5. In re De Vita, 27 N.J.Super. 101, 98 A.2d 716.

6. In re De Vita, 13 N.J. 341, 99 A.2d 589 (per curiam opinion based on opinion below; one Justice dissented).

7. De Vita v. State of New Jersey, 1954, 346 U.S. 923, 74 S.Ct. 309, 98 L.Ed. 416.

8. State v. Grillo, 16 N.J. 103, 106 A.2d 294 (Two Justices dissented).

9. See United States ex rel. De Vita v. McCorkle, 3 Cir., 216 F.2d 743, 744.

10. Ibid.

11. 28 U.S.C.A. § 2243.

12. 28 U.S.C.A. § 2253.

13. The Court of Appeals granted a further stay of execution pending the disposition of the appeal. United States ex rel. De Vita v. McCorkle, 3 Cir., 214 F. 2d 823.

14. United States ex rel. De Vita v. McCorkle, 3 Cir., 216 F.2d 743.

15. A stay of execution has been granted by this court to De Vita and Grillo pending disposition of this application.

16. See pages 18 and 19, infra.

failure of this court to have before it the proper record during the August 16, 1954 hearing on the application for the writ of habeas corpus. This court interprets the language in the Court of Appeals' opinion to mean that to decide the merits of this application this court must have before it the same documents which were before the Supreme Court of New Jersey when it considered the appeals from the Essex County Court's denial on April 15, 1954 of De Vita's and on March 25, 1954 of Grillo's motions for a new trial.[17] Counsel have agreed that the following documents which were before the Supreme Court of New Jersey and which they have submitted to this court are the proper "record" for this court to consider:

1. Brief and Appendix for Appellant De Vita.

2. Brief and Appendix for Appellant Grillo.

3. Brief for the State (combined reply to both appellants' briefs).

As for a complete transcript and appendix of the record, this court has the two volumes which were submitted to the Supreme Court of the United States on Petition for Writ of Certiorari, which, while not part of the Supreme Court of New Jersey record, the parties have stipulated is a complete transcript of the state court trial and appeal up to and including the Supreme Court of New Jersey's affirmance of the convictions (footnote 3 supra).

### Application For The Writ Of Habeas Corpus

The grounds for this application are that during the voir dire questioning of prospective trial jurors, Mr. Arthur Kuhnle who was accepted as a juror and who was one of the jurors who rendered the verdict, concealed information from and falsely answered a question by counsel.[18]

From such allegations of fact it is argued that (1) De Vita did not receive a fair trial by an impartial jury within the meaning of the due process and equal protection of the laws clauses of the Fourteenth Amendment to the United States Constitution, and (2) Kuhnle's conduct was a fraud on the trial court requiring that the conviction be set aside. The word "fraud" was never mentioned in the New Jersey Supreme Court except inferentially.

### The Voir Dire Questioning Of Prospective Jurors

During the morning session of the first day of the trial, nine prospective jurors were questioned by court and counsel, but only No. 6 was asked the question "Has anyone ever attempted to commit a robbery against you or any other member of your family?" The answer was "No, sir." He was excused by the State.

---

17. Although only De Vita's application is now before this court, since the Supreme Court of New Jersey considered the appeals of both men, the record before it on De Vita's appeal included Grillo's brief and appendix.

18. The detailed allegations of fact regarding Kuhnle are contained in the 7th and 10th paragraphs of the application for the writ:

"* * * Among the jurors who were examined and finally accepted to serve on the jury was one Arthur Kuhnle. Arthur Kuhnle was employed as a night manager by the Western Union Telegraph Company on February 25, 1952 and had been so employed for a long time previous to that date. During the night of March 30, 1951, Arthur Kuhnle, while taking a deposit from the Western Union office to be deposited in the National State Bank on Broad Street, Newark, New Jersey, was 'stuck up' at the point of a gun, and robbed of the money which he was carrying. * * *

"10. Not only did Arthur Kuhnle fail to disclose that he had been a victim of a hold-up but he failed to truthfully answer the question as to whether he knew of any of the State's officers or personnel. This is clearly shown by the newspaper article above quoted in which it is stated that Kuhnle ordinarily called for a police escort each night and that he discussed the subject matter of his being held up with Detective Sergeant Stottsmeister and Detectives Fruchter and Keller. * * * "

Kuhnle was the tenth person questioned that day and the first at the afternoon session.

Kuhnle admitted he had read about the case in the newspapers, but he said he had no firm, imbedded conviction as to the innocence or guilt of the defendants, and if selected as a juror he could approach the trial with an open mind. He answered questions pertaining to reasonable doubt, a recommendation of life imprisonment, the police status of the victim of the killing, his (Kuhnle's) acquaintance with certain individuals, the nationality of the defendants, obeying the charge of the court. He answered no to several general questions relating to whether he was biased and whether he knew of any reason why he could not sit as a fair and impartial juror. In response to the fourth and fifth questions asked by Mr. McGlynn, attorney for De Vita, Kuhnle admitted he had heard and followed the questions asked during the morning voir dire. Immediately McGlynn asked him only two more general questions, the first of which, in substance, was whether Kuhnle knew of any reason " * * * anything at all that you might think of that would prejudice you?" His answer: "I would have no prejudice at all." In response to McGlynn's second (and final) question, Kuhnle said he thought he would be able to recommend life imprisonment. Two of the three counsel for the defendants De Vita and Grillo specifically asked Kuhnle if he knew of any reason why he could not sit as a fair and impartial juror, and the third one substantially asked that question. Kuhnle said that he knew no reason. Prospective juror No. 13 was asked if anyone ever attempted to rob her or any member of her family. She answered: "Yes," fifteen years ago at least, but she knew very little about it and the incident would not influence her. She also said that she had formed an opinion concerning the case as a result of reading newspaper accounts of the killing. She was peremp-

torily challenged by counsel for De Vita. Prospective jurors No. 24, No. 36, No. 38, No. 46, and No. 76 also were asked the question relating to their experience as robbery victims. Thus, only seven prospective jurors, three of whom served as jurors, were asked the question, although thirty-three of them were extensively questioned during the voir dire.

### The Action Of The New Jersey State Courts

Under the doctrine of Brown v. Allen,[19] one of the duties of this court is to decide whether the New Jersey state courts gave fair consideration to the issues and the offered evidence relating thereto now raised by this application for the writ of habeas corpus. On April 15, 1954, in the Essex County Court the same judge who sat at the trial of the case heard De Vita's motion for a new trial based on the same grounds now urged on this application. Since his counsel had been in court on March 25, 1954, when the same motion on the same grounds was made on behalf of Grillo, the court asked counsel whether he desired to make any additional arguments. When he stated that he did not, for the reasons in denying Grillo's motion the court also denied De Vita's companion motion.

The transcript of the Essex County Court hearing held on March 25, 1954, shows that prior to rendering its decision denying the motion for a new trial, the judge read the record of Kuhnle's voir dire, stating that he had given the matter some consideration before he had heard the argument by counsel. Judge Conlon in denying the motion for a new trial stated his reasons so well and forceably that I cannot do better than to adopt them as my own.

"There is no indication that the Prosecutor or any representative of the Prosecutor or of the State had any knowledge of the incident that had occurred to Mr. Kuhnle in March, 1951, and, therefore, I can

19. 1953, 344 U.S. 443, 463, 73 S.Ct. 397, 97 L.Ed. 469.

give that (20) suggestion no consideration.

"In the second place, an examination of the transcript indicates that Mr. Kuhnle was not asked whether he had ever been the victim of a robbery; to the contrary, a reading of the transcript of his examination on his voir dire indicates that he frankly and clearly answered every question that was put to him.

"In the third place, there was no obligation on Mr. Kuhnle's part to volunteer any information as to the incident, assuming (which I do not feel we can do), that he even thought about it.

"In the fourth place, he stated that he knew of no reason which would disqualify him or which would prevent his bringing in a fair verdict. If he had any thought of the incident of the stick-up of some year before, he obviously did not feel that he would be influenced by that incident.

"In the fifth place, even if the information had been elicited, in my opinion, and counsel concedes it, an affirmative answer to the effect that he had been the victim of a robbery some year before would not have been sufficient ground for a challenge for cause.

"That brings the situation down to the gist of the position that the defendant takes, and it is this as I understand it: That the defendant was deprived of due (21) process of law because he did not have the opportunity of people on the jury that he felt were unbiased and could render a fair verdict. If such a ground as this were considered by the Court some two years after the trial, the Court would be setting a precedent whereby after every conviction in a criminal case there might be a re-examination of the intimate life of every person who sat on the jury, going back an indeterminate space of time, and if that minute examination of the past life of any one of the twelve jurors revealed any information that might (not that would, but that might) have some bearing upon the juror's verdict, there would be established a ground for setting aside the verdict and granting a new trial. I think the mere statement of that proposition answers itself. The situation could be reduced to an absurdity." Brief and Appendix for Appellant, pp. 23a, 24a.

On direct appeal to the Supreme Court of New Jersey, counsel for both De Vita and Grillo argued in their briefs, in substance, that it was Kuhnle's duty to disclose the fact that eleven months previously he had been the victim of a robbery even though he had not been asked the question.[20]

The Supreme Court of New Jersey's opinion [21] shows that it noted the following facts:

1. Kuhnle's experience as a robbery victim.

2. Prospective juror No. 6, whose voir dire preceded Kuhnle's, had been asked whether he ever had been the victim of a robbery.

3. Thirty-three prospective jurors were comprehensively examined, seven of them were asked whether they or members of their families ever had been robbery victims, and three of the latter became trial jurors.

4. The contents of Kuhnle's entire voir dire, including his repeated avowals of impartiality.

---

20. De Vita's counsel argued as Point I: "* * * It is the duty of the juror, upon his *voir dire*, to make all disclosures of any matter which may interfere with his essential qualities to perform his duties intelligently and impartially * * *." Grillo's counsel argued, inter alia: "The juror should, of course, whether specifically questioned or not, disclose any material information which might bear upon his qualifications."

21. State v. Grillo, 16 N.J. 103, 106 A.2d 294 (Two Justices dissented).

That court considered the contention that Kuhnle, although not asked whether he ever had been a robbery victim, should have volunteered that information; it concluded that since counsel is allowed a wide latitude in examining on the voir dire, diligence would have revealed the Kuhnle robbery incident, and since defendants did not contend that Kuhnle, if he had revealed the information, would have been excused for cause, the mere fact that he would have been peremptorily challenged was not ground for a new trial. The court also held that in view of Kuhnle's sworn statements that he was not baised, bias could not be imputed to him solely upon the showing that prior to the trial he had been the victim of a robbery.

The briefs submitted to the Supreme Court of New Jersey clearly presented the basic issue vigorously argued before this court, viz., whether, under the circumstances of this case a juror's failure to volunteer information during his voir dire is a fraud on the court requiring a new trial. That the New Jersey Supreme Court considered the briefs cannot be doubted in view of a court rule [22] requiring New Jersey appellate courts to read briefs in advance of the hearing. And the majority opinion [23] reflects that the court was aware of the contention herein that the reason Kuhnle should have volunteered the information is that throughout the entire voir dire of all the prospective jurors the questions asked by counsel clearly indicated that the information withheld by Kuhnle was the sort of information sought to be elicited.

Counsel now argue that the Supreme Court of New Jersey did not give fair consideration to the issue [24] now raised because the majority opinion does not contain the word "fraud." Fraud, however, is but a legal conclusion derived from certain conduct. In this case, all of Kuhnle's allegedly fraudulent conduct occurred during the voir dire, the contents of which the Supreme Court of New Jersey was fully aware. The other offered evidence was a newspaper article describing the robbery of Kuhnle and an affidavit by McGlynn to the effect that if Kuhnle had revealed the incident he would have been peremptorily challenged. Although the majority opinion does not contain the word "fraud," the court read the briefs (and considered the offered evidence) which clearly, though not expressly, presented the issue of fraud. In rejecting the contention " * * * that Kuhnle, although not asked whether he had ever been a robbery victim, should have volunteered that information." [25], the court impliedly held that Kuhnle's conduct was not fraudulent.

Based on the foregoing, this court concludes that the New Jersey state courts gave fair consideration to the issues and the offered evidence.

Did the New Jersey state courts reach a "satisfactory conclusion?" [26] " * * * State adjudication of questions of law cannot, under the habeas corpus statute, be accepted as binding. It is precisely these questions that the federal judge is commanded to decide." [27] In this case, there being no conflict in the

---

22. R.R. 1:30–1. "Study of Briefs, Petitions and Motion Papers in Advance. The appellate courts, and so far as possible the trial courts, shall read briefs, petitions, motions and other moving papers in advance of the hearing. The judges of the appellate courts will confer on the briefs in advance of oral argument, not for the purpose of discussing the merits of the appeal but for the purpose of enabling the presiding judge to advise counsel as to which points in the brief the court particularly desires to hear argument."

23. State v. Grillo, 16 N.J. 103, 106 A.2d 294 (Two Justices dissented).

24. There can be no contention that the courts of New Jersey did not give fair consideration to the offered evidence.

25. State v. Grillo, 16 N.J. 103, 110, 106 A.2d 294, 297 (Two Justices dissented.)

26. Brown v. Allen, 1953, 344 U.S. 443, 463, 73 S.Ct. 397, 97 L.Ed. 469.

27. Id., 344 U.S. at page 506, 73 S.Ct. at page 446 (Opinion of Mr. Justice Frankfurter).

facts, the two questions of law raised by counsel are: (1) Whether in a criminal trial arising out of a killing committed during an armed robbery, the failure of a juror voluntarily to reveal during the voir dire of prospective jurors that eleven months previously he had been the victim of a robbery is a denial of a fair trial by an impartial jury within the meaning of the due process and equal protection of the laws clauses of the Fourteenth Amendment, or (2) whether such conduct is a fraud on the trial court, thereby denying Fourteenth Amendment rights.

### (1) Equal Protection Of The Laws And Due Process Of Law

■ At the outset, this court holds that the State of New Jersey has not denied De Vita the equal protection of the laws. The Supreme Court of the United States has said that "The inhibition that no State shall deprive any person within its jurisdiction of the equal protection of the laws was designed to prevent any person or class of persons from being singled out as a special subject for discriminating and hostile legislation. [Pembina Consolidated Silver Mining &] Milling Co. v. Commonwealth of Pennsylvania, 125 U.S. 181, 188, 8 S.Ct. 737, 31 L.Ed. 650." [28] The rulings of the New Jersey state courts regarding the issue now raised do not show any discrimination toward De Vita; there has been no arbitrary exercise of power.[29] Further, the Court in speaking of the Fourteenth Amendment said: " * * * It leaves the states free to enforce their criminal laws under such statutory provisions and common law doctrines as they deem appropriate; * * *." [30] Thus, the only pertinent constitutional provision invoked by this application for a writ of habeas corpus is the due process clause of the Fourteenth Amendment. The criterion which this court must apply is as was said in Bute v. People of State of Illinois, 1948, 333 U.S. 640, 648, 68 S.Ct. 763, 92 L.Ed. 986, quoting from Hebert v. State of Louisiana, 1926, 272 U.S. 312, 316–317, 47 S.Ct. 103, 71 L.Ed. 270: Was De Vita denied any of the "fundamental principles of liberty and justice" to which he has a right under the due process clause?

■ There is no doubt that a trial by impartial jurors is a fundamental right to which De Vita was entitled. But there is no evidence that Kuhnle was not an impartial juror in that his deliberations or vote or those of his fellow jurors were influenced by the robbery incident. Nor is there any evidence from which to infer that Kuhnle was a biased juror. There is no proof that he intentionally deceived counsel into accepting him as a juror. Not having been asked any question relating to the robbery incident, his failure to reveal it voluntarily is not proof that he intended to deceive counsel or that he wished to conceal a bias. When counsel directed Kuhnle's thinking to the questions asked during the morning session of the first day of the trial (which included the robbery question asked of prospective juror No. 6),[31] he also an-

28. McPherson v. Blacker, 1892, 146 U.S. 1, 39, 13 S.Ct. 3, 12, 36 L.Ed. 869.

29. See Duncan v. State of Missouri, 1894, 152 U.S. 377, 382, 14 S.Ct. 570, 38 L. Ed. 485.

30. Buchalter v. People of State of New York, 1943, 319 U.S. 427, 429, 430, 63 S.Ct. 1129, 1131, 87 L.Ed. 1492.

31. "Q. You heard the interrogations this morning, did you not? A. Yes, sir.
"Q. And I assume you followed them? A. Yes.
"Q. Let me repeat to you my position with reference to the client I represent, Mr. De Vita. I am interested in only one thing in this inquiry into the competency of the jurors and that is that the jury who finally occupy the box to try this case is open minded, free of any prejudice of any kind, nature or description whether it be because the man who was killed was a policeman or an officer of the law, whether the nationality of the defendants—anything at all that you might think of that would prejudice you? A. I would have no prejudice at all.
"Q. You think you could approach this case which is under consideration: that is, that there are three defendants all charged under the theory of the State's

swered truthfully that he heard and followed those questions and he had no prejudice at all against De Vita. Further, Kuhnle made many affirmations under oath to the effect that he was not prejudiced against the defendants and his mind was free and open.

### (2) The Question Of Fraud

Essentially, the questions raised by the charge of fraud are (a) whether, under the circumstances of this case, it was Kuhnle's legal duty to volunteer the information relating to the robbery incident, and (b) if there was not such a duty, whether De Vita was denied due process of law as a result of Kuhnle's conduct.

█ This court is aware that it must exercise its own judgment regarding the alleged denial of due process,[32] but in doing so the court has, of course, sought guidance from similar cases decided throughout the country.

█ (a) While the pertinent criminal cases do not expressly hold that a juror's failure to volunteer information is not fraudulent conduct requiring a new trial, by requiring proof of the factors outlined (I)–(IV), infra, the cases impliedly hold that such failure *per se* is not the type of fraudulent misconduct of a juror requiring a new trial. Where the juror was not asked, either specifically or in substance, a question concerning the allegedly disqualifying factor, even though the existence of it was unknown to the defendant until sometime after the verdict was rendered, a defendant is not entitled to a new trial unless (I) that later discovered information conclusively establishes a disqualification as a matter of law,[33] or (II) bias is shown or indicated,[34] or (III) the juror intentionally concealed the information,[35] or (IV) intentionally misled counsel.[36]

█ █ In this case, Kuhnle was not specifically asked a question relating to the robbery and this court does not find that counsel substantially asked the question by directing Kuhnle's thinking to the morning questions.[37] The fact that

case with murder in the first degree. I think the evidence will show that one of the three is the man who actually fired the shot which killed Mr. Law. Do you think you will be able as a juror to differentiate between the three defendants and, if you find all three guilty of murder in the first degree, be able to follow the second part of your right, namely to recommend life imprisonment for one or two or all three of them notwithstanding the fact that one of them actually fired the shot? A. I think so.
Mr. McGlynn: That's all."

32. Brown v. Allen, 344 U.S. 443, 507, 73 S.Ct. 397, 97 L.Ed. 469 (Opinion of Mr. Justice Frankfurter).

33. See for example, Frazier v. United States, 1948, 335 U.S. 497, 513, 69 S.Ct. 201, 93 L.Ed. 187; Ford v. United States, 5 Cir., 201 F.2d 300; United States v. Rosenstein, 2 Cir., 34 F.2d 630, certiorari denied, sub nom. Rosenstein v. United States, 1929, 280 U.S. 581, 50 S.Ct. 33, 74 L.Ed. 631; United States v. Cross, 9 Mackey 365, 20 D.C. 365, error dismissed Cross v. United States, 145 U.S. 571, 12 S.Ct. 842, 36 L.Ed. 821; State v. Kokoszka, 123 Conn. 161, 193 A. 210; People v. Leonti, 262 N.Y. 256, 186 N.E. 693; Cooper v. State,

27 Okl.Cr. 278, 226 P. 1066; State v. Cooler, 30 S.C. 105, 8 S.E. 692, 3 L.R.A. 181.

34. See, for example, Ford v. United States, supra; Corley v. State, 162 Ark. 178, 257 S.W. 750; State v. Kokoszka, supra; Block v. State, 100 Ind. 357; King v. State, 129 Tex.Cr.R. 371, 87 S.W.2d 726; Norwood v. State, 123 Tex. Cr.R. 134, 58 S.W.2d 100; Pitchford v. Commonwealth, 135 Va. 654, 115 S.E. 707.

35. See, for example, People v. Galloway, 202 Cal. 81, 259 P. 332; State v. Kokoszka, 123 Conn. 161, 193 A. 210; Traviss v. Commonwealth, 106 Pa. 597; State v. Guynn, 87 Utah 320, 48 P.2d 902.

36. See, for example, People v. Ortiz, 320 Ill. 205, 150 N.E. 708; State v. Button, 50 La.Ann. 1071, 23 So. 868; Commonwealth v. Sydlosky, 305 Pa. 406, 158 A. 154; Commonwealth v. Walker, 283 Pa. 468, 129 A. 453, 454; Commonwealth v. McCloskey, 273 Pa. 456, 117 A. 192; Commonwealth v. Dombek, 268 Pa. 262, 110 A. 532; Traviss v. Commonwealth, supra; Norwood v. State, 123 Tex.Cr. R. 134, 58 S.W.2d 100.

37. See footnote 31, supra.

178

eleven months prior to the trial Kuhnle was a robbery victim is not a disqualification as a matter of law; there is no proof of actual bias nor of facts from which to infer bias; there is no proof that Kuhnle intentionally concealed any information, or intentionally misled counsel. Further, the rationale of many of the cases is that since counsel had the opportunity to ask questions during the voir dire, if he did not ask a question pertaining to the after-discovered information he failed to use "due diligence" to ascertain pertinent information concerning the prospective juror's background and the defendant is not entitled to a new trial.[38] Under New Jersey law De Vita, through his counsel, was not restrained by the court in exercising his right to elicit information to determine whether to interpose a challenge.[39] Moreover, absent contrary proof, the court presumes that at least three days before the trial, De Vita received a list of proposed jurors.[40] (b) There is no fundamental unfairness in such a system; it is designed to provide, and in this case did so provide, an accused person with ample time and opportunity to exercise his right to eliminate anyone from the jury. In this case, due process of law required no more. In view of that unrestrained opportunity allowed counsel to ascertain undesirable facts concerning Kuhnle, this court, aside from the ample precedent already discussed, does not find that De Vita has been denied any of his rights to due process of law.

The second allegation of fact is that

Kuhnle told an untruth when he answered no to the question "You don't know any of the State's officers or personnel?" According to the newspaper article describing the Kuhnle robbery incident, he ordinarily called for a police escort each night and subsequent to the robbery he was questioned by three Newark detectives. There is no contention that the Supreme Court of New Jersey did not give fair consideration to this issue and the offered evidence. Did that court reach a satisfactory conclusion in holding that even if Kuhnle " * * * had occasional city police protection, that he answered the question as any reasonable person would do when not versed in the law, namely that 'State's officers or personnel' meant State of New Jersey officials or employees and not City of Newark police or County of Essex officials. The question should have been lucidly submitted." [41]

■ This court agrees with that opinion. Additionally, in response to the form in which the question was asked, assuming Kuhnle did "know" local police, he did not lie. He was not asked whether he knew any local officers or personnel, just as he was not asked if he ever had been a victim of a robbery. Thus, for the reasons already set forth, this court concludes that De Vita has not been denied due process of law.

No Need To Take Testimony

The Third Circuit in reversing this court's earlier determination of this ap-

38. See, for example, Bush v. United States, 5 Cir., 16 F.2d 709; People v. Galloway, supra; Boatright v. State, 51 Ga.App. 80, 179 S.E. 740; State v. Burch, 202 Iowa 348, 209 N.W. 474; Ervin v. State, 168 Miss. 145, 151 So. 177; State v. Murray, 316 Mo. 31, 292 S.W. 434; State v. Figuli, Ohio App., 36 N.E.2d 19, appeal dismissed 134 Ohio St. 495, 17 N.E.2d 920; Cooper v. State, 27 Okl.Cr. 278, 226 P. 1066; Commonwealth v. Sydlosky, supra; Commonwealth v. Walker, supra; Commonwealth v. McCloskey, supra; State v. Gregory, 171 S.C. 535, 172 S.E. 692; King v.

State, 129 Tex.Cr.R. 371, 87 S.W.2d 726; Norwood v. State, supra; State v. Guynn, supra. If, however, counsel was justified in assuming that the later discovered facts did not exist then his failure to ask the question is not held to be lack of due diligence. Taylor v. State, 222 Ala. 140, 131 So. 236; State v. Figuli, supra.

39. N.J.S.A. 2A:78-4.

40. R.R. 3:7-2.

41. State v. Grillo, 16 N.J. 103, 115, 106 A.2d 294, 300 (Two Justices dissented;

plication [42] remanded the case because "* * * it is the letter and the spirit of the Fourteenth Amendment that *either* the original state court record be itself carefully scrutinized *or* a hearing he [sic] held before any conclusion as to the alleged fundamental unfairness of the state court trial is reached. * * * [citing cases]." (Emphasis supplied).

The record before this court has afforded it an adequate opportunity to weigh the sufficiency of the allegations and the evidence, and there are no unusual circumstances calling for a more extensive hearing.[43] The facts are undisputed. Moreover, a further hearing would not adduce any additional relevant facts. The principal argument made by counsel for De Vita was that he was denied due process of law because of Kuhnle's allegedly fraudulent concealment and false answer.[44] This court has found as a matter of law that De Vita was not denied due process of law because Kuhnle never was asked if he ever had been a victim of a robbery or if he knew any local police. Thus, there is no need to adduce any additional facts. Further, as a matter of sound administration of the criminal courts, absent factors which are not present in this case, a juror should not be questioned subsequent to the verdict. The Third Circuit has commented upon the practice of interviewing a juror after a trial as to his state of mind during the trial:

"* * * A full exercise of the right of *voir dire* examination ordinarily will afford a defendant ample opportunity to ascertain the qualifications of a prospective juror and to determine whether he possesses bias and prejudice. In the interest of encouraging citizens to serve on juries without fear of later disparaging inquiries into their lives and personal habits we state that the answers given by a juror under oath on the *voir dire* should not be challenged through subsequent questioning of that juror except under exceptional circumstances. While Bridge was not expressly questioned as to his possible bias and prejudice on *voir dire*, he stated that he had no previous knowledge of the case, that he did not know relator or any member of his family and that he would try the case according to the evidence and the law. Daverse's counsel did not exercise his right of examination beyond the point indicated." [45]

The extensive research and study required in connection with the facts present in this petition riveted in my mind the complexities, delays, costliness, and general frustration in the enforcement of criminal justice by the use and abuse of habeas corpus in homicide cases. Justice moves very slowly to punish brutal murderers and dangerous criminals who take advantage of every chance which the "Merry-Go-Round" of our courts allow. The victims of their crimes generally receive no chance at all.

the dissenting opinion, however, is silent on this point).

42. United States ex rel. De Vita v. McCorkle, 3 Cir., 216 F.2d 743, 747.

43. Brown v. Allen, 1953, 344 U.S. 443, 460–465, 73 S.Ct. 397, 97 L.Ed. 469; Cooper v. Denno, D.C., 129 F.Supp. 123, 125 (court's discretion whether to hold plenary hearing with witnesses).

44. During the second oral argument before this court, counsel argued that for the purpose of this application it is irrelevant whether or not Kuhnle was a biased juror.

45. United States ex rel. Daverse v. Hohn, 3 Cir., 198 F.2d 934, 938–939, certiorari denied 1953, 344 U.S. 913, 73 S.Ct. 336, 97 L.Ed. 704. See also United States ex rel. Darcy v. Handy, 3 Cir., 203 F.2d 407, 419, certiorari denied sub nom. Maroney v. United States ex rel. Darcy, 1953, 346 U.S. 865, 74 S.Ct. 103, 98 L.Ed. 375, where Chief Judge Biggs of the Third Circuit wrote of "* * * an unnecessary and undesirable harrassment of juries post the return of verdict and of trial * * *."

Our Circuit Court of Appeals recently turned down an appeal [46] to invalidate a Pennsylvania State conviction in a felony murder where the petitioner had received twenty-three stays of execution for a crime committed in 1947. It has been said many times, "To delay justice is to deny justice." Writs are seldom applied for in felony murder cases unless the jury makes no recommendation of mercy. This despite the fact that the tenderness of juries usually makes it very difficult to get the death penalty.

It is generally conceded by the Bench and Bar alike that most attacks on state convictions, whether by direct appeal or collaterally through habeas corpus, lack merit and result in a great waste of judicial time and energy. However, care must be given that due and adequate consideration is given to the few meritorious cases.

It is Hornbook Law that in habeas corpus proceedings the burden of overturning a conviction rests on the applicant. In the case sub judice, plaintiff has failed to meet that burden.

Discharge from conviction through habeas corpus is not an act of judicial clemency but a protection against illegal custody only. To quote the Bard of Avon:

"The tongues of dying men
Enforce attention like deep harmony."

Richard II

Since the petition does not warrant the allowance by this court of the writ, it is on this 14th day of July, 1955, Ordered that the petition of De Vita be and the same is hereby denied. This determination also applies to Grillo.

46. U. S. ex rel. Darcy v. Handy, 224 F.2d 504.